|  |  |
|---|---|
| 2 W | 233 |
| 216 | 52 |

## Brown *against* Simpson.

Upon an application to the court by a terre-tenant to open a judgment and let him into a defence as to the alleged lien of it upon his lands, he does not thereby become a party to the writ of *scire facias*, upon which the judgment was rendered, with all the consequences which would have resulted if he had originally been made a party to the suit.

The fact of a mortgagee becoming the owner of the mortgaged premises is notice to a purchaser from the mortgagee that the mortgage is satisfied; and this, although the land was sold at sheriff's sale to the mortgagee, subject to the lien of the mortgage. The holder, by assignment of one of the bonds recited in the mortgage, under such circumstances, is not secured by the lien which the mortgage had.

ERROR to the common pleas of *Cumberland* county.

Thompson Brown, assignee of Thomas Gallagher and Henry Fahnestock, who were assignees of Barnet Aughinbaugh and John Clippinger against Barnet Aughinbaugh, administrator of Adam Snoddy deceased, and William Simpson terre-tenant.

Previously to the 11th of July 1817, Adam Snoddy was the owner of a tract of land which on that day he mortgaged to B. Aughinbaugh to secure the payment of several bonds of 1333 dollars 33 cents each payable on the 1st of April of each year thereafter. On the 18th of June 1818, B. Aughinbaugh, together with John Clippinger, assigned the bond due the 1st of April 1819, to Fahnestock and Gallagher, and guarantied its payment. On the 24th of De-

cember. 1818, they assigned it to Thompson Brown, who on the 23d of July 1819, obtained a judgment thereon in the common pleas of Cumberland county against Adam Snoddy, with a stay of execution for nine months. On the 22d of December 1824, and to January term 1825, a *scire facias* was issued against B. Aughinbaugh, administrator of Adam Snoddy, to revive this judgment, upon which judgment was obtained on the 19th of August 1830, and a *fieri facias* issued, and was levied on the land originally mortgaged : a *venditioni exponas* was issued, when William Simpson came in and prayed the court to open the judgment and let him into a defence as to the alleged lien, which was ordered by the court.

The foregoing facts having been given in evidence on the trial, the terre-tenant, William Simpson, then gave in evidence a judgment of the Carlisle Bank against Adam Snoddy, obtained on the 1st of June 1819, on which a *fieri facias* was issued and levied upon the same land, and which was afterwards, on the 10th of August 1820, sold on a *venditioni exponas* to B. Aughinbaugh for 40 dollars, *subject to the mortgage*, and the sheriff's deed was so made. After this the Carlisle Bank obtained a judgment against B. Aughinbaugh, on which a *fieri facias* was issued and levied on this land, and on the 21st of July 1824 the defendant, B. Aughinbaugh, agreed to waive inquisition, and that the land should be sold on the 12th of August 1824 without further suit ; and it was so sold, and the deed made and acknowledged on the same day to Dr John Simpson, for 3050 dollars. The defendant then further gave in evidence the death of Dr John Simpson, and that his estate was, by a proceeding in partition in the orphan's court, vested in his son, William Simpson.

The plaintiff then gave in evidence judgments of the Carlisle Bank and of Dr John Simpson against B. Aughinbaugh, obtained previously to 1824, and then proved by parol that the alleged judicial sale of the land to Dr Simpson originated in a private agreement between B. Aughinbaugh and Dr John Simpson, by which the land was sold for 6000 dollars ; 3000 dollars of which was to be paid to the Carlisle Bank in discharge of their judgments against B. Aughinbaugh, by an assignment of stock to that amount, which Dr Simpson had in the bank, and the balance of the purchase money was to be applied to the discharge of the judgments of Dr Simpson against B. Aughinbaugh, all of which were obtained in May 1824, and this arrangement was carried into effect through the medium of a sheriff's sale for the purpose of making title. The principles raised in the case are exhibited in the following points.

Plaintiff's points.

1. The court are requested to charge the jury that the assignment of the bond on which judgment was entered, made 18th of June 1818, and subsequent assignments of said bond, transferred so much of the mortgage as was given to secure that bond to the assignee, and that the sheriff's sale made to Mr Aughinbaugh on the judgment of the Carlisle Bank being expressly subject to the lien of the

mortgage, did not divest the land from the lien of the said mortgage so far as respects said bond and the judgment entered upon it.

2. That if the jury believe that Aughinbaugh made a private sale to Dr Simpson of the same land for 6000 dollars, and that the sheriff's sale to Dr Simpson was on a *fieri facias*, and for 3100 dollars, and a mere contrivance to make the title, and the said 6000 dollars nor any part of it was brought into court for appropriation, but that the same was arranged between the parties by Dr Simpson's transferring his stock to Mr Aughinbaugh and entering satisfaction on the judgment which he had against said Aughinbaugh, that then the said sales so made, &c. does not divest the lien of the said mortgage, bond and judgment, so far as respects said bond and judgment, and the plaintiffs would be entitled to recover. .

3. That if the jury believe that there was a private sale to Dr Simpson by Aughinbaugh for 6000 dollars, and the sheriff's sale was a mere contrivance to make the title, and the bid was made of 3100 dollars, less than the purchase money agreed on, to make the appropriation out of that purchase money out of court, so that it might be used to divest the interests of the parties and to prevent the same from being applied according to law to the payment of the plaintiff's mortgage, bond and judgment, such contrivance was a fraud upon the plaintiff and would not divest his lien, and he would be entitled to recover.

4. The mortgage being of record, and expressly referred to in the deed of the sheriff to Aughinbugh, Dr Simpson is presumed in law to have had full notice of it, and the debt due to the plaintiff secured by it and the judgment entered thereon. And when a sheriff's sale is made under an agreement between a seller and buyer merely for the purpose or as a mode of making the title, and the purchase money is not brought into court for appropriation but is arranged between the parties under their agreement, such sale has no other effect than a private sale, and does not divest the lien of judgment.

5. If the jury believe that an agreement was made between Dr Simpson and Aughinbaugh for the purchase and sale of this land for 6000 dollars; that a *fieri facias* was issued on the judgment of the Carlisle Bank against Aughinbaugh on the 24th of July 1824, when an agreement was made by Aughinbaugh with the privity and knowledge of Dr Simpson that the property should be condemned and sold on the 12th of August 1824; that it was so sold on the said *fieri facias* and a deed to the purchaser Dr Simpson made the same day, which was acknowledged the 13th of September 1824; and all this was for the purpose of making title to Dr Simpson who knew that the money was not to be brought into court for appropriation, and consented thereto and received a part of the purchase money in discharge of his own judgments against Aughinbaugh; such arrangement and sale would not divest the lien of Brown's judgment against Snoddy under the other facts in the cause.

[Brown v. Simpson.]

Charge to the jury.

The plaintiff's judgment was entered on the 4th of August 1819; the sale to Simpson was in August 1824; as no *scire facias* issued within five years after the entry of plaintiff's judgment, and a sale was made, and the purchaser took and continued actual possession continually from that time, we say, if the facts are true as stated, that the judgment considered *per se,* has lost its lien as to the present terre-tenant. This position is not controverted, but plaintiffs contend that they are entitled to tack the lien of the mortgage of 11th of July 1817 to it, so as to estimate the lien from that date; if so this issue would be in favour of the plaintiff, but otherwise it should be found for the defendant. We are of opinion that, as B. Aughinbaugh was mortgagee, and as he purchased at sheriff's sale the equity of redemption in 1820, the mortgage and its lien was extinguished, and if so it cannot now be tacked to the judgment. If it is true, that the transfer of the bond to Thompson Brown was an equitable transfer of the mortgage *pro tanto,* out of the proceeds of the mortgage, even for contribution, the assignee would be entitled. But the mortgage was a unit, the equity of redemption a unit, and there could be but one remedy. If the mortgagee, who was the legal party, became vested with both legal and equitable interest, there was a merger of the equity of redemption. Two suits could not be sustained upon the mortgage, nor could a portion of the interest of Snoddy be sold; and if the remedy on the mortgage was gone, the mortgage itself was virtually gone. The mortgagee could not sustain an action against himself as terre-tenant; a *scire facias* must be for the whole of the mortgage; it could not be sustained on a partial assignment for a small part. The facts are not disputed, and if they are as stated, the law is on this point against the plaintiff. We are further of opinion that, whether the purchase by Dr Simpson was judicial or private, if he had no notice of the transfer of the bond, and paid his money as stated, that he would hold the property discharged from the lien, and that the recitals in the sheriff's deed to Aughinbaugh, and that sale being subject to the mortgage, and the fact of suit being brought, and the proceedings upon the bond, would not afford such constructive notice as would affect him. As the facts in the case are not controverted, and as the law, as we have already stated it in reference to such supposed state of facts, is against the plaintiff, it might be unnecessary to answer all the points put by plaintiff's counsel in detail; yet if the case be sent back from the supreme court, it is important that we should have their opinion on all the points; for the purpose of bringing them up, we answer them in the negative.

The errors assigned were in the answers of the court to the points put by plaintiff's counsel.

*Watts,* for plaintiff in error, contended, that the sale by the sheriff to Aughinbaugh, being expressly subject to the mortgage, was still

[Brown v. Simpson.]

liable to its lien *pro tanto* of the bond secured by it, and outstanding in the hands of an assignee. That the assignment of the bond entitled the assignee to the security which the mortgage afforded, were cited, Donnelly *v.* Hays, 17 *Serg. & Rawle* 400 ; 1 *Madd. Chan.* 435 ; Corporation *v.* Wallace, 3 *Rawle* 140 ; Betts *v.* Hebner, 1 *Penns. Rep.* 280 ; Mehaffy *v.* Shore, 2 *Penns. Rep.* 375 ; M'Grew *v.* M'Lanahan, 1 *Penns. Rep.* 44 ; Jackson *v.* Willard, 4 *Johns. Rep.* 41. But the sale to Aughinbaugh was subject to the lien of the judgment, as such, because it was a on a mortgage bond. The sale by the sheriff to Simpson was not a judicial sale, but a private sale, carried into effect for the sake of convenience to the parties, by judicial process : and when this sale was made, the judgment of the plaintiff was a lien on the land, and this lien was continued by the issuing of a *scire facias,* within five years from the rendition of the original judgment ; that the terre-tenant was not made a party to that *scire facias,* is remedied by his application to be made a party, to try whether the lien of the original judgment was not resting on his land ; whereby all advantages were afforded him which he would have had if the writ had been served on him.

*Alexander* and *Carothers,* for defendant in error. This was not the case of a terre-tenant let into a defence under a *scire facias,* to try whether the original judgment was a lien ; but was in the nature of an issue, to try whether the judgment on the *scire facias* was a lien. That it was not a lien, is settled in the case of Lusk *v.* Davidson, 3 *Penns. Rep.* 329. Aughinbaugh being the mortgagee, and becoming the purchaser of the land, was legal notice to every one that the mortgage was satisfied ; and nothing short of express actual notice to a purchaser from him that there was a bond outstanding and unsatisfied, can affect him. Scott *v.* Gallaher, 14 *Serg. & Rawle* 334 ; Smith *v.* Painter, 5 *Serg. & Rawle* 223 ; Swartz *v.* Moore, *Ibid.* 257 ; Withers's Appeal, 14 *Serg. & Rawle* 185. But the sale to Simpson was a judicial one. Gurmy *v.* Alexander, 14 *Serg. & Rawle* 257 ; Barnet *v.* Washebaugh, 16 *Serg. & Rawle* 413 ; M'Lanahan *v.* M'Lanahan, 1 *Penns. Rep.* 96. If there was any irregularity or illegality in the sale, it should have been taken advantage of before the deed was acknowledged. Miller *v.* Milford, 2 *Serg. & Rawle* 38 ; Murphy *v.* M'Cleary, 3 *Yeates* 405 ; Allison *v.* Rankin, 7 *Serg. & Rawle* 271 ; Stewart *v.* Stocker, 13 *Serg. & Rawle* 203 ; Burd *v.* Dansdale, 2 *Binn.* 91 ; Duncan v. Robinson, 2 *Yeates* 454 ; Arnold *v.* Gorr, 1 *Rawle* 226.

The opinion of the Court was delivered by

KENNEDY, J.—This case in substance was an issue joined in the court of common pleas of Cumberland county, to decide whether a tract of land containing two hundred and one acres and forty perches, which had been taken in execution as the estate late of Adam Snoddy deceased, at the suit of the plaintiff, upon a judgment of upwards of 2600 dol-

lars, against Barnet Aughinbaugh, administrator of Adam Snoddy, to be levied *de bonis*, &c., was subject to the lien of the original judgment obtained for the same debt against Adam Snoddy himself in his lifetime.

It is to be regretted that form in matters such as the present, is not more attended to. For want of it, indistinctness and confusion often arise, and render it difficult to discover what was the design of the parties, and to determine upon the legal effect of their proceedings. In this case, the judgment had been confessed July the 23d, 1819, with a stay of execution entered upon the record for nine months, to the plaintiff Thompson Brown, by Adam Snoddy himself in his lifetime ; but dying afterwards, a *scire facias* to make Barnet Aughinbaugh, his administrator, a party to it, and to continue the lien thereof upon the real estate of the deceased which he owned within the county at the time of its entry, was sued out upon it the 22d of December 1824, to January term 1825. In the mean time, however, Dr John Simpson, since dead, the father of William Simpson, the defendant in this case, on the 12th of August 1824, became the purchaser of the land, for the consideration of 6000 dollars, and was in the actual possession of it by his tenants, at the time the writ of *scire facias* was issued. It was served upon Barnet Aughinbaugh, as administrator of Adam Snoddy, but was not served upon Dr John Simpson, or any of his tenants in possession of the land. Afterwards, on the 19th of August 1830, Aughinbaugh confessed a judgment *de bonis*, &c. on 2260 dollars 17 cents. Upon this judgment a *fieri facias* was sued out to November term 1830, upon which the sheriff, to whom it was directed, returned a levy on and condemnation of the land in question. A writ of *venditioni exponas* was afterwards sued out to January term 1831, commanding the sheriff to sell the land ; but before a sale was made, on the 11th of January 1831, William Simpson, the defendant in this case, claiming to be the terre-tenant of the land, made application to the court below to have the judgment opened so as to let him in to make defence against the alleged lien of the judgment upon the land, which was accordingly ordered by the court, and his name was entered as terre-tenant upon the record of the judgment. A plea was put in by him denying the lien of the judgment upon the land—issue was taken on it—and the parties went to trial before the court below and the jury, upon the question whether the judgment still continued to be a lien upon the land or not. That the judgment is just and valid to its full amount against the estate of Adam Snoddy is not questioned, and such is the form in which it stands entered upon the record. With what propriety then can a judgment be opened, the justice and validity of which are admitted, and to the form of which there is no exception ? I am strongly inclined to think that a more regular course might have been adopted and pursued, one too which would have tended to prevent some embarrassment that the case at first, in its present aspect, seemed to present, by raising the question

[Brown v. Simpson.]

whether William Simpson, in making application as he did, to have the judgment opened so as to let him in to make a defence as terre-tenant, and having himself placed as such upon the record of the *scire facias*, did not thereby in effect make himself a party to the writ of *scire facias*, and put himself in the same situation as if he had been duly served with it before its return, and such service had been returned by the sheriff upon it? This might certainly have been avoided by his applying to the court to order a feigned issue to be made up and tried between the plaintiff in the execution and him, for the purpose of ascertaining whether the land was bound by the judgment or not, and liable for the payment of the debt, and to order further, that the sale of the land should be staid until the trial of the feigned issue was had; and after that, the plaintiff might have, been left to do as he pleased. Still, however, notwithstanding this would have been the preferable and more judicious course, I am satisfied that it was all that was intended by the course adopted. It was resorted to, I presume, from analogy to a very irregular and slovenly practice which has prevailed to a certain extent in the state, of opening judgments upon the application of the creditors of the defendants to the judgments, alleging that they were entered or obtained by collusion between the plaintiffs and the defendants, for the purpose of defrauding the creditors. Such judgments have been frequently opened upon the application of the creditors, so as to let them in to make a defence, as it has been called, by showing that the judgments were collusively obtained or entered with intention to defraud the creditors of the defendants in them, instead of an application to the court to direct a feigned issue to be joined to try the question of fraud. Why open a judgment that is perfectly good and available as against the defendant, notwithstanding all that is alleged against it be true. If what be alleged of it be true, then the payment of it only ought to be postponed until all the just debts of the defendant shall be satisfied; and if after that he shall have property still remaining sufficient to satisfy the judgment entered with a view to defraud his creditors, the plaintiff therein may levy the amount of the judgment out of it. It seems to me that opening a judgment for any purpose whatever, must necessarily stay all further proceedings upon it until it shall be closed again in some way; but I take it that the plaintiff, in such fraudulent judgment, is entitled in law to have execution at any time against the body of the defendant, unless the defendant can show property sufficient to satisfy that judgment, together with all just claims against him; and if so, what right has the court to tie up the hands of the plaintiff by making an order to open the judgment? None whatever, that I can perceive, and I should be much pleased to see all such anomalous practices reformed.

The debt for which the judgment was confessed by Snoddy to the plaintiff arose from a bond bearing date the 11th of July 1817, given with six others, by Snoddy to Barnet Aughinbaugh, one for 4343

dollars, payable on the 1st day of April 1818, and the remaining six each for 1333 dollars 33 cents, payable annually thereafter. The bond given for the debt in this case was payable on the 1st of April 1819, and before the day of payment was assigned by Barnet Aughinbaugh and John Clippinger jointly, on the 18th of June 1818, to Thomas Gallagher and Henry Fahnestock, by an indorsement made and executed on the back of the bond, and afterwards, on the 24th of December, they executed also a guarantee of payment on it. John Clippinger was not an obligee in the bond, nor was his name in it at all ; nor does it appear that he had any interest in it in any way. On the same day that Aughinbaugh and Clippinger executed the guarantee, Gallagher assigned the bond with a guarantee of payment to Thompson Brown, the plaintiff in this case.

On the 4th of August 1819, an amicable action and judgment were entered upon the docket of the court of common pleas of Cumberland county, of August 1819, No. 323, in the following terms, to wit:

"Thompson Brown, assignee of Thomas Gallagher and Henry Fahnestock, who were assignees of Barnet Aughinbaugh and John Clippinger *v.* Adam Snoddy, entered the 4th of August 1819.

"Amicable action in debt in the common pleas of Cumberland county, founded upon a bond conditioned for the payment of 1333 dollars 33 cents, on the 1st of April, A. D. 1819.

"July 23, 1819, the defendant appears to this suit and confesses judgment to the plaintiff for the sum of 1358 dollars 45 cents debt, lawful money of the United States, with interest from the date hereof, with costs of suit and stay of execution for nine months from the date hereof."

At the same time that the bond assigned by Aughinbaugh and Clippinger to Gallagher and Fahnestock, and the other six bonds were executed and given by Adam Snoddy to Barnet Aughinbaugh ; a mortgage to secure the payment of them, was likewise executed and delivered by Snoddy to Aughinbaugh upon the land now in question, of which William Simpson, the defendant, claims to be the terre-tenant, and to hold it discharged from the lien of the mortgage as well as of the judgment.

Upon the 1st of June 1819, the Carlisle Bank obtained a judgment in the court of common pleas of Cumberland county against Adam Snoddy by confession, for 760 dollars, upon which they sued out a *fieri facias* to April term 1820, by virue of which the sheriff of the county levied on the mortgaged tract of land, subject to the mortgage, together with some other lands of Snoddy, which were condemned to sale, and the land in dispute appraised at 47 dollars per acre. A writ of *venditioni exponas* was issued to August term 1820, under which the sheriff sold the mortgaged tract of land to Barnet Aughinbaugh for 40 dollars, to whom he made a deed of conveyance in the usual form. On the 29th of December 1819, the Carlisle Bank obtained a judgment by confession against Barnet Aughin-

[Brown v. Simpson.]

baugh and John Clippinger for 3950 dollars, to be paid with interest from the 26th of March preceding, by annual instalments of 790 dollars 26 cents each ; the first to be paid on the 26th of March then next ensuing.

After all the instalments of this judgment had become payable, a *fieri facias* was sued out upon it to August term 1824, directed to the sheriff of Cumberland county, who, by virtue thereof, levied upon the mortgaged tract of land as the property of Barnet Aughinbaugh, who, on the 21st of July 1824, executed a written authority authorizing the sheriff, without further writ, to sell the land, by public auction, to the highest bidder, on the 12th of August then next following. The sheriff, accordingly, on the 12th of August 1824, sold the land by public outcry to Dr John Simpson, he being the highest bidder, for 3100 dollars. Barnet Aughinbaugh stood indebted at this time to Dr Simpson by judgments in a sum amounting to nearly 3000 dollars ; and it was agreed between them, as it seems, before the sale of the land by the sheriff took place, that the doctor should become the purchaser of it and allow Aughinbaugh the price of 6000 dollars for it, to be paid by transferring stock in the Carlisle Bank to the amount of 3075 dollars, which he owned, and which Aughinbaugh, by an arrangement with the bank, was to give towards liquidating the judgment upon which the execution was issued against him and Clippinger ; then the doctor was to have the amount of his judgments against Aughinbaugh paid out of the balance of the 6000 dollars, after deducting therefrom the amount of the bank stock. This arrangement was carried into execution immediately. A deed of conveyance for the land was executed and acknowledged to Simpson on the same day of the sale, and possession of it given to him immediately, when he transferred his bank stock to Aughinbaugh who transferred it to the bank in part satisfaction of their judgment against him. Simpson also entered satisfaction upon his judgments against Aughinbaugh. Dr Simpson after this had possession of the land till his death : some time after which, he having died intestate, it was, in the usual course of proceeding had upon such occasions in the orphan's court of Cumberland county, decreed to the defendant, William Simpson, the eldest son of the doctor, who agreed to take it at the valuation of 4810 dollars, which had been set upon it by the inquest awarded by the court for that purpose. This decree of the orphan's court was made on the 12th of May 1829, when he took possession of the land, which he has kept ever since by his tenants.

The only question to be decided in this case is, whether the lien originally created by the entry of the judgment in favour of Brown upon this land, still continues or not.

I shall treat the sale made of the land in this case to Dr John Simpson as a sale made in effect by Barnet Aughinbaugh himself, and not as a judicial sale made by operation of law. For clearly the sheriff had no authority to sell the land but what he received

II.—FF

[Brown v. Simpson.]

from Aughinbaugh, who no doubt was invested at the time with the legal title to it, and therefore could authorize the sheriff to make such sale as he did. This sale then, not being a judicial one, could not discharge the land from the lien of the judgment, which was certainly in full force at that time. Had it been a judicial sale, it would doubtless have discharged the lien of the judgment.

By the act of assembly of 1798, and the construction put on it by this court in the cases of Black *v.* Dobson, 11 *Serg. & Rawle* 94, and Bombay *v.* Boyer, 14 *Serg. & Rawle* 253, the lien of a judgment will expire in five years from the first day of the term of which it is entered, unless within that time a *scire facias* be sued out for the purpose of reviving it; or where there is a stay of execution entered upon the record of the judgment, as in this case, then within five years after the stay shall be up. In this case the judgment was entered on the 23d of July 1819, with stay of execution nine months, and according to the rule first mentioned, the lien of the judgment would have continued to the 22d of April 1825, without a *scire facias.* Adam Snoddy having died in the meantime, a *scire facias* was issued on the 22d of December 1824, four months before the expiration of the five years, to make Barnet Aughinbaugh, his administrator, a party to the judgment, and to continue the lien of it upon the real estate of the deceased, held by him, within the county, at the time it was entered. This *scire facias* was served upon Barnet Aughinbaugh alone, as the administrator of Adam Snoddy, but not on Dr John Simpson, nor on any of his tenants who were in the actual possession of the land. Now, by the express and most positive direction of the act of 1798, the writ of *scire facias* sued out for the purpose of continuing the lien of a judgment, must be served upon the terre-tenants or occupants of the land, where there are any, and so it has been ruled by this court in the case of Lusk *v.* Davidson. 3 *Penns. Rep.* 229. The lien of the judgment therefore expires as to those lands which have been sold by the defendant for a valuable consideration, though subject to the judgment at the time of the sale, unless the *scire facias* sued out within the five years be served upon such purchaser, or his tenants in possession of the land. Hence, the *scire facias* in this case, not being served upon John Simpson, or his tenants who were in the actual possession of the land, could not continue the lien of the judgment.

But it has been argued in this case, that inasmuch as the debt for which the judgment was had in favour of Thompson Brown, is also secured by the mortgage; that the lien of it is preserved and continued upon the land, by force of the mortgage, without the *scire facias.* If it appeared upon the face of the record of this judgment, that it was given for a debt, the payment of which was secured by the mortgage, and by one of the bonds recited in it, I cannot say but that it would be so. But instead of that appearing, or any thing else that could be considered sufficient to put any one of ordinary sagacity and caution upon inquiry, so as to have led to a discovery of the judgment

being entered for a debt secured by the mortgage, the style of the action would rather seem to indicate that it was not for the same or any part of it. From the record of the judgment it may be very fairly inferred, that it was given for a debt due upon a bond payable to Barnet Aughinbaugh and John Clippinger jointly; for Thompson Brown the plaintiff, in the style of his action shows that the origin of his title to the debt on the bond, was by a joint assignment of it from Barnet Aughinbaugh and John Clippinger, which no one could have supposed would have been made of any other bond than one payable jointly to them. There being no declaration or statement filed, setting forth on the record the terms, precise nature and forms of the bond upon which the debt was claimed, and for which the judgment was confessed, the style of the action was the only thing on record that indicated to whom the bond was originally made payable. From this, then, I think the inference that it was payable to Aughinbaugh and Clippinger jointly, was irresistible. But all the bonds mentioned in the mortgage being payable to Barnet Aughinbaugh alone, the record of the judgment could be no notice to Dr Simpson that the debt for which the judgment was confessed by Snoddy was claimed upon one of the bonds secured by the mortgage. And as to his having any notice in fact of any of these records remaining in the hands of an assignee unpaid, there is not a tittle of testimony going to show it.

It is, however, further contended, that Dr Simpson was bound to take notice of the mortgage as it was upon record in the county, and to know whether it was paid or not. Admit this to be so; but then whom was he bound to make the inquiry at, in order to ascertain whether it was paid or not? There were but two persons named in the mortgage on record, the mortgagor and the mortgagee; and it cannot be pretended that there was any other person in being whom Dr Simpson had the means of knowing that he was bound to call on to obtain information of on this point. If Adam Snoddy had been living at the time the doctor bought the land, it will, I think, be admitted for reasons that are obvious, that he would not have been the most proper person for the doctor to have called on to be informed whether the whole of the mortgage money was paid or not. It is well known that debtors oftentimes for various reasons are not willing to acknowledge their indebtedness, and will even affirm the payment of debts contrary to the truth. Beside, Adam Snoddy, if he had been living and inquired of by the doctor as to this matter, would have forfeited or lost nothing by saying that the whole of the mortgage debt was paid, when it fact it was otherwise; so that being subject to no penalty in case he falsified, the inducement to speak the truth was not so great as with Aughinbaugh, the mortgagee; who, if inquired at for such purpose, might lose or forfeit all that was due to him on the mortgage, in case money really were due on it, by declaring that nothing was due. So far, then, as interest could have an influence in prompting Snoddy or Aughinbaugh to

give correct information with regard to the mortgage debt, whether it was paid or not, it was decidedly in favour of Aughinbaugh, or, in other words, in favour of the mortgagee. He, therefore, is to be considered the most proper person on such occasions, to inquire of, whether the mortgage has been paid and how it stands. But Aughinbaugh in this case being the administrator of Adam Snoddy, who was dead at the time the doctor bought, represented Snoddy as well as himself, and was therefore the only man in being that the doctor, from the face of the mortgage, could know any thing of, to inquire at on the subject. Beside there were other matters appearing on record, sufficient to·satisfy Dr Simpson or any other person about to buy, that the mortgage debt was satisfied or extinguished and gone. After giving the mortgage, the right of Snoddy, the mortgagor, in the land was taken in execution at the suit of the Carlisle Bank, and sold at public auction by the sheriff, to Barnet Aughinbaugh, the mortgagee, who accordingly received a deed of conveyance from the sheriff, duly executed and acknowledged in open court, which was put on record. Aughinbaugh then being owner, or at least appearing on record to be the owner of the whole mortgage debt, and by the sale of the sheriff acquiring the right to all the mortgagor's interest in the land, became the owner of the whole fee simple and of the fund out of which the debt was to be paid. The debt necessarily became thereby extinguished or satisfied. It is, if possible, a stronger case in favour of the extinguishment of the debt than Purviance *v.* Lemmon, 16 *Serg. & Rawle* 292, where a vendor of land, by articles of agreement, under which the purchase money was payable by annual instalments, on payment of which the title was to be transferred to the vendee, after having received some of the instalments, bought the right of his vendee in the land of a person who had bought it previously at sheriff's sale ; and it was held that the remaining instalments thereby became satisfied or extinguished, notwithstanding the first vendor held the notes of his vendee for the payment of them. Dr Simpson seeing all these proceedings and matters upon record, how was it possible that even a suspicion should have been excited in his mind, that the mortgage debt was still in force and not entirely satisfied or gone for ever? In Irvine *v.* Campbell et al., 6 *Binn.* 118, the presumption of a debt being paid or satisfied which had been a lien upon land, was carried much farther in favour of a purchaser of the land, and much beyond what is requisite in this case in order to protect the doctor in his purchase from Aughinbaugh. In that case, the owner of the land had sold and conveyed his right in it as expressed on the face of the conveyance, for 2800 dollars, to be paid by instalments, of which 800 dollars were to be paid in one year thereafter, and the residue in annual instalments of 300 dollars each. The grantee, after a number of the instalments had become payable, some of which only being paid by him, sold and conveyed the land for a valuable consideration, which he received. It not appearing that the second purchaser had actual notice that any

[Brown v. Simpson.]

of the instalments which had become due remained unpaid, it was held that as to them he took the land free and discharged, but subject to the instalments becoming due subsequently. So in the case under consideration, the whole of the mortgage debt having become payable before Dr Simpson purchased the land, is an additional circumstance to fortify the presumption that he had a right to make, that it was all satisfied, and that the land stood discharged from it.

From the view which I have taken of this case, I consider Dr Simpson a *bona fide* purchaser of the land from Barnet Aughinbaugh for a valuable consideration without notice of Thompson Brown's claim under the mortgage, and that he therefore took the land entirely freed and discharged from it. I admit that the assignment of the bond to Brown was an implied assignment of the mortgage *pro tanto*, and that if Dr Simpson, before or at the time of his purchase, had been notified of it, he would have taken the land subject to the payment of it; but inasmuch as he had no notice of it, nor yet any thing put by Brown on record which was calculated to show or to give notice of his interest in the mortgage, Dr Simpson, or the defendant in this case claiming under him, is not to be affected by it. Secret liens or trusts are not to be encouraged upon any species of property whatever; but in no case can such a thing prevail as to real estate against an innocent purchaser of it for a full and valuable consideration without notice, unless our recording acts are to be overturned and set aside.

As to the question of fraud, there was no evidence given on the trial of the cause of fraud having been committed or intended on the part of Dr Simpson; nor yet of circumstances from which the jury could have inferred it: and it would therefore have been error in the court below to have submitted the cause to the jury upon that ground, without some evidence at least to warrant it.

The judgment is affirmed.