# Buffington, to use of Mitchell *versus* Bernard and Hoopes.

A., as principal, and B., as surety, executed and delivered a bond to C. for $2000. Judgment was entered thereon in 1862. In 1866 the amount of the judgment was paid to C., which payment was made by A. appropriating moneys in his hands belonging to his sisters-in-law. An assignment to them of the sum thus appropriated was endorsed on the bond, but the judgment was never marked to their use, nor was the assignment filed. It did not appear affirmatively that the sisters ever had possession of the bond, or that they knew it had been assigned to them. For some unexplained reason, in 1866, the judgment was satisfied by C. The record thus remained until 1877, when it was revived by an amicable scire facias signed only by A., who, having become embarrassed, made an assignment for the benefit of creditors the following day. In 1878, in a scire facias on the judgment, the sisters sought to recover from B., the surety. There was evidence that B. was misled by the record. *Held*, that as they had made no inquiry as to the disposition of their money for eleven years, asserted no claim to the judgment and gave no notice to the surety, who was excused from vigilance by the action of C. and A., they could not call on B. to make good the loss which, in legal contemplation, was the consequence of their own default.

March 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1879, No. 193.

This was a scire facias sur judgment issued April 13th 1878, at the suit of Richard Buffington to the use of Mary Mitchell and

[Buffington *v.* Bernard.]

Sophia Mitchell, against Levis Bernard and Cyrus Hoopes. The defence was made by Hoopes alone. On the 1st day of April 1862, Levis Bernard and Cyrus Hoopes executed a joint bond with warrant of attorney to confess judgment to Richard Buffington for $2000. At the trial before Futhey, P. J., it appeared by the evidence that Hoopes was surety in the bond for Bernard. Judgment was entered on the bond on April 14th 1862. In the spring of 1866, Buffington demanded payment of the bond. Bernard at that time had just settled the estate of Andrew Mitchell, his brother-in-law, and had in his hands as administrator, &c., of said estate, $1600 belonging to Mary and Sophia Mitchell, the equitable plaintiffs, who were his sisters-in-law, and were living with him. He paid Buffington $400, and the arrears of interest, with his own funds, thus reducing the bond to $1600, and purchased for them, with the $1600 in his hands, the bond from Buffington, and obtained from the latter an assignment to them, endorsed upon the bond. The assignment was not dated, but the evidence shows it to have been executed on, or about, the 28th of March 1866, which, as the receipt on the bond shows, was the day of the payment of the $400. The assignment was not marked to the use of the equitable plaintiffs on the record. On May 1st 1866, thirty-three days after the assignment, Buffington, without the knowledge of any of the parties interested, entered satisfaction upon the record of the judgment. On April 1st 1867, and annually thereafter until 1877, Bernard paid the interest on the bond to the equitable plaintiffs, in whose possession the bond remained. The lien of the judgment expired April 14th 1867, and was never thereafter revived until January 11th 1877, when Bernard, by an amicable scire facias, signed only by himself, and without the knowledge of the equitable plaintiffs, revived it against himself, and the next day, January 12th 1877, made an assignment for the benefit of his creditors. Hoopes alleged that some time in the year 1867, in searching for liens against his own property, he saw this entry of satisfaction upon the record.

He further testified that he made inquiry of Bernard touching this entry, and that Bernard informed him that the bond was paid and satisfied. Bernard, on the contrary, testified that he never told Hoopes that the bond was satisfied, because he did not know that fact himself, until the day prior to his assignment for the benefit of creditors, in 1877; and that while he told Hoopes that Buffington was paid, he never informed him that the bond was paid. On the 1st of April 1870, a judgment of $1150 was entered as a lien against Bernard's property by Mary Pennock et al. On May 6th 1872, the Bank of Brandywine entered a judgment against Bernard for $3000. Other judgments were entered against Bernard between 1867 and 1877, which were satisfied before his assignment.

[Buffington *v.* Bernard.]

In June 1875, the Bank of Brandywine called upon Bernard for payment of a portion of the $3000 judgment bond. The latter applied to Hoopes for a loan. Hoopes raised $1800 by a mortgage on his own property, paid off $1000 of the $3000 Bank of Brandywine judgment, took an assignment on the record of the judgment for that amount, and loaned the remaining $800 to Bernard, taking as security therefor, a judgment for $800 against Bernard's property, which became the next lien to the Bank of Brandywine judgment. A short time previous to Bernard's assignment in 1877, he confessed judgment to other parties. In the distribution of his assigned estate, the Pennock judgment was paid in full, as also the Bank of Brandywine judgment of $3000, with interest, and the sum of $93.66 was paid upon the $800 judgment. Hoopes's loss on this transaction of 1875, was $706.34. A dividend on the $2000 judgment, of $163.58, was awarded to the equitable plaintiffs out of the personal estate of Bernard.

Hoopes claimed to be relieved in this action, on the ground that he was a mere surety, and was misled by the entry of satisfaction into the belief that the debt was paid, and that he had been injured,

First, by losing the benefit of the lien, which he might have had on Bernard's property, if he had not rested under the belief that the debt was paid; and

Second, by incurring an additional liability of $1800 in 1875, for the benefit of Bernard, which he swears he would not have incurred, if he had known the Buffington bond was still outstanding, and upon which he lost $706.34 as above stated.

The court, after setting forth, in substance, the foregoing facts, inter alia, charged:

" And upon them we charge you that the plaintiffs, having failed to procure the entry of the assignment on the record, or the marking of the judgment to their use, and thus allowed it to remain in the name of Mr. Buffington alone, and subject to his control, are responsible for his act in entering satisfaction upon it; and if Mr. Hoopes has satisfied you that he was thus misled, induced to believe that the debt was paid, he is entitled to relief against the plaintiffs' claim, to the extent that he has shown you that he was injured thereby, or rather would be injured if the plaintiffs were allowed to recover their claim. * * * If you find he was misled, and that he could and would have secured the entire debt on Mr. Bernard's property if he had not been so misled, then, if the plaintiffs were permitted to recover, the defendant's injury would be equal to the entire debt, and in such case the plaintiffs should not, and must not, recover anything. The relief to which the defendant would be entitled under such circumstances would go to the entire extent of the plaintiffs' claim. If you so find, you need go no further, but should render a verdict for the defendant."

9 Norris—5

[Buffington *v.* Bernard.].

The verdict was for defendant, when plaintiffs took this writ, and assigned for error the foregoing portion of the charge.

*W. E. & W. T. Barber,* for plaintiffs in error.—The entry of satisfaction did not discharge the surety: Roberts *v.* Halstead, 9 Barr 35; Peterson et al. *v.* Lothrop, 10 Casey 226; De Witt's Appeal, 26 P. F. Smith 287. An entry of satisfaction made by a party who has disposed of all his interest in an obligation, or a security, by an assignment for a valuable consideration, is void as against the assignee; and therefore no one who was bound by the obligation previous to such entry, can take advantage of the void act of the assignor to the injury of the assignee: Lancaster *v.* Smith, 17 P. F. Smith 427; Fleming *v.* Parry, 12 Harris 51; West's Appeal, 7 Norris 341.

Under all the circumstances of the case, it was clearly the duty of Cyrus Hoopes, upon seeing the entry of satisfaction, as he avers, in 1867, upon the record, to have informed himself by inquiring of the legal plaintiff whether said judgment had been actually paid and satisfied: Brown *v.* Simpson, 2 Watts 243. In the absence of such inquiry, he is not entitled to equitable relief here.

*Charles H. Pennypacker,* for defendant in error.—The assignment of the plaintiffs in error was not upon the record, and the satisfaction entered upon the record was conclusive evidence of the extinguishment of the debt. Hoopes acted upon this notice and had a right to rely upon it. The negligence of the plaintiffs misled him, and he is relieved from liability upon this obligation. It was their duty to have had their assignment noted on the record: Bury *v.* Hartman, 4 S. & R. 175; Brindle *v.* McIlvaine, 9 Id. 74; Horton *v.* Miller, 8 Wright 256; Fisher *v.* Knox, 1 Harris 625; Campbell's Appeal, 5 Casey 401; Fraley's Appeal, 26 P. F. Smith 42; Pratt's Appeal, 27 Id. 378; Coon & Neil *v.* Reed, 29 Id. 242; Gaullagher *v.* Caldwell, 10 Harris 302.

Mr. Justice WOODWARD delivered the opinion of the court, May 5th 1879.

It was most unfortunate for the two ladies who are the plaintiffs in interest here, that through a long term of years they trusted implicitly to the resources, business ability and good faith of their brother-in-law, in whose family they resided. On the 1st of April 1862, Levis Bernard, as principal, and Cyrus Hoopes, as surety, executed and delivered to Richard Buffington a bond for $2000, with a warrant of attorney attached to it. Judgment was entered on this bond on the 14th of April 1862. In the spring of 1866, the amount of the judgment was paid to Buffington. Bernard appropriated towards the payment $1600, belonging to Mary and Sophia Mitchell; and on or about the 28th of March 1866, an

[Buffington *v.* Bernard.]

assignment of that sum to them was endorsed on the bond. The judgment, however, was never marked to their use, and the assignment was never filed. For some unexplained reason, the judgment was satisfied by Buffington on the 1st of May 1866. The record remained in this situation until the 11th of January 1877, when it was revived by an amicable scire facias, signed only by Bernard, who, having become hopelessly embarrassed, made an assignment for the benefit of his creditors the next day.

At the trial of the issue, Buffington said he had no recollection of the assignment, and could not recall the circumstances under which the judgment had been satisfied. It did not appear affirmatively that the Misses Mitchell ever had possession of the bond, or that they knew it had been assigned to them. It is probable that Bernard procured the satisfaction of the judgment by some representation that was plausible enough to give assurance to Buffington, in order to subserve some business exigency of the hour. And it is probable also that he used the moneys of his sisters-in-law in full confidence in his ability to account for it when an account should be required. That is of course. Trust money is always applied in the first instance to the personal purposes of the trustee, with the most upright intention at the right time to make it right. He paid the interest on the $1600 from year to year until the 1st of April 1876. And it was not until his insolvency was certain that he made the abortive attempt to secure the misdirected and wasted fund to his *cestuis que trust* by a revival of the original judgment against himself.

Hoopes was the surety of Bernard. He testified that he ascertained in 1867, that Buffington had satisfied the judgment. This was in the course of a search for liens against himself required in order to obtain a loan of $12,500 from his brother. He said he did not know until 1877, that any part of the judgment had been assigned. And Bernard said in his testimony: "I have no particular recollection of any conversation with Cyrus about the assignment. * * * I do not know that he knew that I had money of the estate (of Andrew Mitchell) due Mary and Sophia Mitchell. I cannot say that I told Cyrus how I paid this bond. I told him I had paid Richard Buffington." In the meantime, in June 1875, Hoopes raised $1800 for Bernard. Of this sum $1000 was paid on account of an existing judgment against Bernard, receiving an assignment of that amount. For the remaining $800, Bernard gave him a fresh judgment, on which he suffered a loss of $706.34 in the sale and distribution of Bernard's estate. Upon the trial, however, he asserted the right to be discharged from the whole amount of the Buffington judgment. He alleged that if it had remained open, or if it had been marked to the use of the plaintiffs in interest, or if he had in any way received notice of the assignment, he could have protected himself by having the lien obtained

in 1862, preserved against the property of Bernard, by requiring the plaintiffs to collect it, or by paying it and reviving it himself. The jury found that he was misled, and that, with notice of the true state of the record, he could and would have been able to make himself secure. A general verdict in his favor was returned.

Whilst intimate personal relations existed between the assignees and Bernard, yet so far as this judgment was concerned, their relations in a legal aspect were adverse. In disposing of the question brought up for review, therefore, the rights of the parties must be adjusted by settled legal rules. It was decided in Bury v. Hartman, 4 S. & R. 175, and in Brindle v. McIlvaine, 9 Id. 74, that where a bond has been assigned under the Act of the 28th of May 1715, a payment made by the obligor to the obligee before notice was good. In Bury v. Hartman, GIBSON, J., dissented, but as Chief Justice, he delivered the opinion of the court in Fisher v. Knox, 1 Harris 622, in which it was ruled that "if the assignee of a moiety of a judgment does not have his interest therein marked on the docket, the bond being subsequently in the possession of the obligee, who assigns all his interest in the judgment bond, without notice being had by the second assignee of the former assignment, and the assignment to the second assignee is marked on the record, the first assignee will be postponed in favor of the second." These authorities were followed in Campbell's Appeal, 5 Casey 501, and in Fraley's Appeal, 26 P. F. Smith 42. An analogous principle was enforced in Brown v. Simpson, 2 Watts 233. Exceptions to the rule have been found in cases where the second assignee has received the judgment as a collateral security, and not for a consideration paid at the time of transfer : Pratt's Appeal, 27 P. F. Smith 378 ; Coon v. Reed, 29 Id. 240. In Gaullagher v. Caldwell, 10 Harris 300, a judgment was assigned, but no note of it was made on the docket, and no notice was given to the defendant until more than twelve years after the assignment. A release obtained in the meantime by the defendant from the plaintiff for a valuable consideration, was held valid against the assignee. If the principal obligor in a bond obtain a release by fraud, and the obligee suffer several years to elapse, without bringing suit or giving notice to the surety, during which period the principal becomes insolvent, the surety is discharged in equity : Gordon v. McCarty, 3 Whart. 407. The principle of the last case is decisive of the present question. These assignees made no inquiry as to the disposition of their money for eleven years. They asserted no claim to the judgment. They gave no notice to the surety, who was excused from vigilance by the action of Buffington and Bernard. They cannot call on him to make good the loss which in legal contemplation was the consequence of their own default.

Judgment affirmed.