# Frank v. Guarantee Trust and Safe Deposit Company, Appellant.

*Ground    rents—Merger—Extinguishment—Mortgage—Recording    acts—Notice.*

Where an owner of a ground rent purchases the ground itself and subsequently executes a mortgage without indicating an intention in the mortgage to prevent a merger of the rent in the title to the land, and thereafter executes an assignment of the ground rents to another person, one who takes

title under foreclosure of the mortgage takes the fee in the land with the ground rents extinguished, and the assignee of the ground rents takes nothing by his assignment.

*Ground rent—Merger—Intervening estate—Mortgage—Secret lien—Notice.*

A ground rent does not merge by the purchase of land out of which it issued by the owner of the rent where there is an intervening estate in, or charge on, the land held by a third party, a stranger to the title to the fee; but this does not apply to a secret trust or equity of which a subsequent purchaser has no notice.

The fact that the sheriff sells land subject to ground rents does not prevent the subsequent merger of the ground rents, where the purchaser is the owner of the ground rents; nor is it notice to a subsequent mortgagee that they were subsisting encumbrances when he took his mortgage.

MITCHELL, C. J., and FELL, J., dissent.

Argued March 21, 1906.   Reargued May 2, 1906.   Appeal, No. 386, Jan. T., 1905, by defendant, from decree of C. P. No. 2, Phila. Co., Dec. T., 1904, No. 2,711, on bill in equity in case of Philip Frank, Jr., v. Guarantee Trust and Safe Deposit Company, Trustee under will of Mary C. Penrose, deceased.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ., on reargument.   Affirmed.

Bill in equity to declare ground rents extinguished.

SULZBERGER, P. J., filed the following opinion :

FINDINGS OF FACT.

The court finds the following facts :

1. Lewis Stover, being the owner thereof, conveyed premises Nos. 2210 and 2212 Fitzwater street, Philadelphia, to Thomas Fellony in fee by two separate deeds dated July 11, 1874, and duly recorded, reserving thereout unto the said Lewis Stover and his heirs from each of the said premises a certain yearly ground rent of $180, and each deed being subject to certain building and drainage restrictions therein recited.

2. By deed dated July 11, 1874, and duly recorded, Thomas Fellony conveyed the said premises Nos. 2210 and 2212 Fitzwater street, inter alia, unto Bridget Loughery in fee, under and subject to the above-mentioned ground rents and to building and drainage restrictions in said deed recited.

3. Upon December 9, 1874, Bridget Loughery executed her

bond to the said Lewis Stover, conditioned for the payment of
$5,000 one year from the date thereof, and secured by a mort-
gage of even date therewith, upon, inter alia, the said premises
Nos. 2210 and 2212 Fitzwater street, which mortgage was re-
corded March 1, 1875, and was expressly made subject to
the above-mentioned ground rents and building and drain-
age restrictions.    Judgment was entered on said bond on Sep-
tember 24, 1878, and execution issued thereon.

4. At the suit of Christopher Dobson against, inter alia,
Bridget Loughery, in court of common pleas of Philadelphia
county, judgment was obtained by the said Dobson against the
said Loughery upon March 8, 1879.    Upon the same day the
said judgment was marked to the use of Lewis Stover, who, in
due course, upon January 17, 1880, issued a writ of venditioni
exponas, commanding the sheriff to expose, inter alia, the said
premises Nos. 2210 and 2212 Fitzwater street, as the properties
of Bridget Loughery, at public sale, subject to the above-men-
tioned ground rents and building restrictions.    At the sheriff's
sale the said Lewis Stover bought in the said premises and title
thereto was vested in him by sheriff's deed, duly acknowledged
February 7, 1880, in said court, which deed was made subject
to the above-mentioned ground rents and building restrictions.

5. Upon June 1, 1880, Lewis Stover held legal title to the
premises Nos. 2210 and 2212 Fitzwater street, and having
never granted or assigned the ground rents thereout reserved
by him in his deeds of the said premises to Thomas Fellony,
dated July 10, 1874, in the first finding of fact mentioned,
and having never assigned the mortgage given to him upon
said premises December 9, 1874, by Bridget Loughery in the
third finding of fact mentioned, the said Stover, upon the said
June 1, 1880, in addition to the legal title to the said premises,
likewise held legal title to the said ground rents and was pos-
sessed of the said mortgage upon the said premises.

6. Upon June 1, 1880, to secure the payment of the sum of
$3,000, the said Lewis Stover executed his bond and mortgage
to Philip Frank, dated June 1, 1880, which mortgage was re-
corded upon the same day wherein the said Stover expressly re-
cited that he did " grant, bargain, sell, alien and confirm " unto
the said Philip Frank the above-mentioned premises Nos. 2210
and 2212 Fitzwater street, " under and subject to certain re-

strictions as to building and drainage." The said mortgage
contains no reference or mention of any sort or kind to or of
the ground rents or mortgage mentioned above in the first and
third findings of fact, but does refer to the deed poll above
mentioned, in which the existence of the said ground rents was
recited.

7. By assignment dated and recorded December 8, 1902, the
said Lewis Stover did grant and assign the ground rents re-
served by him out of Nos. 2210 and 2212 Fitzwater street in
the first finding of fact mentioned, unto the Guarantee Trust
and Safe Deposit Company, as trustee under the will of Mary
C. Penrose.

8. At the time the premises Nos. 2210 and 2212 Fitzwater
street were mortgaged to Philip Frank, as above set forth,
there was nothing in the public records to show that the said
Stover held ground rents reserved by him out of the said prem-
ises in 1874 in trust for the said Mary C. Penrose, then Mary
C. Farren, nor anything to show that she or any person other
than the said Lewis Stover had any interest whatever in said
ground rents. Any interest of any person other than the said
Lewis Stover, or any trust in favor of any person, then existing
in said ground rents was a secret interest or trust, of which
the said Philip Frank had no notice or knowledge of any sort
or kind whatsoever when he took the $3,000 mortgage upon
the said premises upon June 1, 1880, as aforesaid.

9. At the time the said Philip Frank took the mortgage
upon the said premises, on June 1, 1880, there was nothing in
the public records to show that the said Lewis Stover held the
mortgage given to him upon said premises by Bridget Loughery
upon December 9, 1874, as in the third finding of fact men-
tioned, for any but his own use, nor did the public records dis-
close that any other person than the said Stover had any in-
terest of any sort or kind in the said mortgage, or that the said
Stover held the said mortgage in trust for any person whatso-
ever. Any interest of any person other than the said Lewis
Stover, or any trust in favor of any person, then existing in
said mortgage was a secret interest or trust, of which the said
Philip Frank had no notice or knowledge of any sort or kind
whatsoever when he took the $3,000 mortgage upon the said
premises upon June 1, 1880, as aforesaid.

10. The said Lewis Stover departed this life April 24, 1904.

11. In November, 1904, the said Philip Frank instituted proceedings to foreclose his said mortgage upon the said premises in court of common pleas of Philadelphia county, and so proceeded therewith that the said premises were sold under said foreclosure proceedings by the sheriff to Philip Frank, Jr., who took title thereto by deed poll from the sheriff, dated January 9, 1905, which deed was, upon January 10, 1905, duly acknowledged in said court.

12. On June 1, 1876, the said Lewis Stover had in his hands moneys of Mary C. Farren, a minor (who subsequently by marriage became Mary C. Penrose), to a considerable amount, probably about the sum of $20,000. How long before that date these moneys came into his hands does not appear from the testimony. He had then also in his hands the eight yearly ground rents mentioned in the first finding. He also had a mortgage of $5,000 on a portion of the premises out of which these ground rents were reserved. On February 7, 1880, he obtained title from the sheriff to Nos. 2210 and 2212 Fitzwater street (portion of said premises), subject to said ground rents.

13. On June 1, 1880, he executed his bond and mortgage to the plaintiff on the premises Nos. 2210 and 2212 Fitzwater street.

14. A writing was produced as of the date of June 1, 1881, between Lewis Stover and Mary C. Farren, by which he agreed that he would thereafter " hold seven instead of eight of said ground rents of the par value of $3,000, for the use of the said Mary E. Farren, and the said Lewis Stover doth hereby acknowledge that he holds seven of said ground rents for use, benefit and security of Mary C. Farren, and that he, the said Lewis Stover, will assign them to her upon demand."

15. At some time probably subsequent to the date of this agreement, the said Stover mortgaged the said ground rents as his own, and said mortgage or mortgages was or were, according to his own statement, unpaid as late as 1901. By December 8, 1902, he had paid off the mortgages and then assigned the ground rents to the defendant.

There is no question of pure fact in dispute. On June 1, 1880, Lewis Stover, the owner of record of premises Nos. 2210

and 2212 Fitzwater street, mortgaged the same to the plaintiff for $3,000.

Besides being the record owner of the premises, he was also the record owner of a ground rent of $3,000 on each of the said lots, the same having been reserved by him in 1874.

To the lots themselves, he took title on February 7, 1880.

The only question for determination is whether the mortgagee took subject to the ground rent or free and clear of it.

The general rule is that " when a greater estate and less coincide and meet in one and the same person, without any intermediate estate, the less is immediately merged, that is, sunk or drowned, in the latter; but they must be in one and the same person, at one and the same time, in one and. the same right: " Bouvier's Law Dict.; 20 Am. & Eng. Ency. of Law (2d ed.), 588.

All these requisites of a merger were present in this case. The estates in the land and in the rent were, according to the record, in Stover, in his own right, at the time of his mortgage to Frank.

There are two contentions by the defendant:

1. That there was an intermediate estate between the land and the rent, in one Albert Soley.

2. That Stover held the rents in trust for Mary C. Farren (Penrose).

In support of the first contention, it is advanced that among Mr. Stover's papers there was found a mortgage from Bridget Loughery to Lewis Stover and that on the back of this paper there were written in the handwriting of Stover, in pencil, the words : " This mortgage is held for Albert Soley—Int. fr. Dec. 9/76."

This is all the evidence. We have no information as to who Albert Soley was, or, indeed, whether he ever existed. There is no light thrown upon any dealings that he ever had with Stover, and—what is still more singular—neither Albert Soley, nor anybody in his interest, comes forward to say that he has any claim whatever upon that mortgage, or ever had.

The contention, therefore, that there was an intermediate estate in the said Soley, must be overruled.

The second contention presents greater difficulties. It is predicated on the notion that Stover had bought the ground

rents with the money of Mary C. Farren (Penrose). The proof in support of this allegation is insufficient. Stover in fact owned these rents on July 11, 1874, and there is no real evidence that Mary C. Farren (Penrose) had anything to do with them before June 1, 1881, on which day Stover prepared a paper which was executed by him and Mary Farren. As this was a whole year after he made the Frank mortgage it was ineffective to disturb Frank's status. It is thought, apparently, that the recitals in the agreement of June 1, 1881, furnish competent evidence of antecedent facts. This proposition cannot be maintained. Two persons cannot by agreement state facts so as retroactively to impair the estate of a third person not a party to the agreement, and who is ignorant, not only of the agreement, but of the facts therein set forth. Moreover, the agreement, on its face, presents abundant evidence of its untrustworthiness.

It is as follows :

" Mem. of agreement made this first day of June, A. D. 1881, between Lewis Stover and Mary C. Farren, as follows :

" Whereas Bernard N. Farren, guardian of the said Mary C. Farren, did place in the hands of the said Lewis Stover the sum of Twenty thousand dollars, which sum was invested in Ground Rents issuing out of Eight lots of ground, situate on Fitzwater Street between 22d and 23rd Sts. in the City of Philadelphia, of $3,000. Each, in the name of said Lewis Stover, to be assigned to the said Mary C. Farren upon her request.

" And Whereas, the owner of said lots of ground has become insolvent and neglected to pay the accruing rent as the same became due, but the said Lewis Stover hath from time to time advanced and paid to the said Mary C. Farren since the first of June, 1876, the sum of $3,050.00 and some of the said houses have been sold at sheriff's sale, and bought by the said Lewis Stover, in order to protect said arrears, and others will probably be sold in the same way ;

" Now it is agreed that the said Lewis Stover shall allow and pay to the said Mary C. Farren the sum of Six per cent. on $20,000 from June 1, 1876, to June 1, 1881, amounting to $6,000, in lieu of all ground rent in arrear, and from this date, June 1, 1881, pay the ground rents on seven of said lots as they

shall accrue, to wit, June and December of each year, according to the following settlement:

" June 1, 1876, Money advanced by B. H. Farren,
    guardian . . . . . . .    $20,000
" Int. to June 1, 1881 . . . . .    6,000
                                        $26,000
" Cash advanced by Lewis Stover. . .    3,050
                                        $22,950
" Cash this day advanced by Lewis Stover. .    1,950
" Balance remaining in ground rents . .    $21,000 .

" And it is clearly understood that the said Lewis Stover shall hereafter hold seven instead of eight of said ground rents of the par value of $3,000.00 for the use of the said Mary E. Farren and the said Lewis Stover doth hereby acknowledge that he holds seven of said ground rents for use, benefit and security of Mary C. Farren, and that he the said Lewis Stover will assign them to her upon demand, and that the said Mary C. Farren doth hereby agree and acknowledge that one of her said eight ground rents has been paid out and settled by the said Lewis Stover and that she now has the right to demand of the said Lewis Stover seven ground rents of the par value of $3,000 each, instead of eight ground rents as heretofore admitted and acknowledged by the said Lewis Stover."

If this means anything, it means:

1. That on June 1, 1876, Mary Farren became the owner of eight $3,000 ground rents for the sum of $20,000.

2. That she was entitled to the rent thereon for five years from 1876 to 1881, half-yearly, in all (without interest) $7,200.

3. That she had received on account thereof $5,000.

4. That consequently she was now entitled to but seven of the ground rents.

The real result of this statement is that on June 1, 1881, Mary Farren was entitled to have her eight ground rents and the sum of $2,200 in cash for arrears, whereas by the agreement it is stated to be that Mary loses, not only the arrears, but also one of her ground rents.

· But this is not all. The recital concerning the insolvency of the owner of said lots, is not confirmed by any testimony and would, in any event, be no reason for taking title in Stover's name rather than in Mary Farren's.

Moreover, in order to overcome the calculation above made, the agreement expressly substitutes as Mary Farren's claim, interest on $20,000 for the ground rent itself, thus viewing the $20,000 as a loan to Stover, which is settled as of the date of June 1, 1881, by giving her seven ground rents. Even these seven ground rents are not so described or specified as to be certainly identifiable. From the paper itself, we cannot tell on which side of the street is the land out of which they arise, nor the precise location thereof, on whichever side it may be.

Such accounting as this must render the statements of the paper entirely too doubtful to be relied on.

There is, of course, an alternative view. Stover may, at a time before June 1, 1881, have, in his mind, intended to put what may be called a kind of equitable or moral mortgage upon the ground rents as collateral security for the $20,000 he owed Mary Farren. In this way alone could the accounting be justified, but this would negative the antecedent trust for Mary Farren, which would at best date from June 1, 1881, a point of time too late to interfere with the plaintiff's pre-existing rights.

The general public policy is to uphold the recording acts. " A purchaser for a valuable consideration without actual or constructive notice of the trust, holds the property discharged of the interest of the cestui que trust: Perry on Trusts, sec. 218.

Such a one is entitled to priority in equity as well as at law, according to the well-known maxim that where equities are equal the law shall prevail: Perry on Trusts, sec. 218; Heilner v. Imbrie, 6 S. & R. 401; Mott v. Clark, 9 Pa. 399; Bracken v. Miller, 4 W. & S. 102; Filby v. Miller, 25 Pa. 264; Kramer v. Arthurs, 7 Pa. 165; Sergeant v. Ingersoll, 7 Pa. 340; 15 Pa. 343.

These principles are not, it is believed, questioned in any of our cases. The strongest proposition that the defendant can put forward is that though at the time of his mortgage to Frank, Stover was the legal owner of the rent, yet Mary Farren was the equitable owner.

We have already indicated that we cannot accept this as a fact; but even if we could, we should still be confronted with

the condition that the plaintiff dealt in total ignorance of it, that Stover was put in the position of dealing with the property as his own, and that, moreover, from 1876, when the estate of Mary Farren is claimed to have accrued, down to 1902, nothing was done to give public notice of the true state of affairs.

The policy of the commonwealth is clearly indicated in the " Act for the greater certainty of title and more secure enjoyment of Real Estate," approved April 22, 1856, P. L. 532. By the fourth section thereof, implied or constructive trusts are saved from the necessity of being in writing, but the sixth section limits proceedings to enforce any implied or resulting trust as to realty to five years after such trust accrued, unless the same shall have been acknowledged by writing to subsist by the party to be charged therewith within the said period : Provided, that as to anyone affected with a trust by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when by reasonable diligence the party defrauded might have discovered the same; but no bona fide purchaser from him shall be affected thereby or deprived of the protection of the said limitation.

The meaning of this is plain. Recorded titles of bona fide purchasers must prevail even against undiscovered fraud, however plain be the right of the defrauded party to relief against the wrongdoer.

In our case there is no allegation of fraud on the part of Stover. Careless dealing on both sides, no doubt, there was. But as early as June 1, 1881, Mary Farren had a written paper which could protect her right either by recording it or by proceeding upon it, and yet for twenty-one years she remained supine and inactive.

She certainly has no undiluted equity. The plaintiff, on the other hand, at the time of the mortgage dealt only with Stover, owner of the land and owner of the rent. It would have been not only inequitable, but absurd, for Stover to meet Frank by telling him that the latter's mortgage was postponed to a rent which he owed himself. Under such circumstances merger is inevitable. A man cannot mortgage his land and then defeat the pledge by declaring that he has split up the land into two estates, both his own, one of which is exempt

from the pledge.  Only a solid equity can prevent a merger under such circumstances.

This we do not think existed either in Stover or in Mary Farren.

We are of the opinion that the plaintiff is entitled to relief prayed for.

The court entered the following decree:

1. That ground rents upon premises Nos. 2210 and 2212 Fitzwater street, Philadelphia, reserved by Lewis Stover and conveyed by the said Stover to the defendant company are merged, extinguished and discharged and have no existence as estates in or encumbrances upon the said premises.

2. That the defendant company deliver up the said assignment to the plaintiff to be canceled, and that the said defendant company acknowledge, execute and deliver to plaintiff a deed of extinguishment of the said ground rents.

*Error assigned* amongst others was the decree of the court.

*John G. Johnson,* for appellant.—The case presented at the trial in the court below, was one in which there was an outstanding mortgage, which prevented any merger: Cook v. Brightly, 46 Pa. 439 ; Pennock v. Eagles, 102 Pa. 295 ; Charnley v. Hansbury, 13 Pa. 16.

*Stanley Folz,* with him *Leon H. Folz,* for appellee.—As to Philip Frank, the mortgagee, the ground rents created by Stover in 1874 were merged and extinguished, inasmuch as they were held by Stover, the holder of the legal title to the properties, at the time he made the mortgage to Frank : Philips v. Clarkson, 3 Yeates, 124 ; Henderson v. Stryker, 164 Pa. 170 ; Funk v. Voneida, 11 S. & R. 109 ; Shaffer v. Greer, 87 Pa. 370 ; Gratz v. Ewalt, 2 Binn. 95 ; Bosler v. Kuhn, 8 W. & S. 183 ; Ingersoll v. Sergeant, 1 Whart. 337 ; Coke on Littleton, 143b; James v. Johnson, 6 Johns. Ch. 417 ; Koons v. Hartman, 7 Watts, 20 ; Gardner v. Astor, 3 Johns. Ch. 53.

The Pennsylvania cases recognize these rules.  Where one who holds a charge upon land and title thereto, as well, conveys or mortgages the land, without expressly making convey-

ance or mortgage subject to the charge, the charge is held to be merged and the grantee or mortgagee of the land takes clear thereof: Brown v. Simpson, 2 Watts, 233 ; Koons v. Hartman, 7 Watts, 20 ; Moore v. Bank, 8 Watts, 138 ; Richards v. Ayers, 1 W. & S. 485 ; Riegle v. Seiger, 2 P. & W. 340 ; Edwards v. Hoopes, 2 Whart. 420 ; Steckel v. Koons, 102 Pa. 493 ; Hollenberger v. Yaukey, 145 Pa. 179 ; Henderson v. Stryker, 164 Pa. 170 ; Vetter v. Vetter, 13 Pa. Superior Ct. 584 ; Updegrove v. Updegrove, 1 Pa. 136.

Frank, as a mortgagee, was a purchaser, and having no knowledge of any secret trust in the $5,000 mortgage, is not affected thereby: Brown v. Simpson, 2 Watts, 233 ; Logan v. Eva, 144 Pa. 312.

There are four cases in our reports in which intervening encumbrances exist where a merger of a prior encumbrance held by the owner of the fee was the question in issue.   These cases are : Helmbold v. Man, 4 Wharton, 410 ; Moore v. Bank, 8 Watts, 138 ; Richards v. Ayers, 1 W. & S. 485 ; Cook v. Brightly, 46 Pa. 439.

No other cases in point can be found by appellee in our reports.   The facts of the four cases are of the same type, and similar to the facts of Cook v. Brightly, 46 Pa. 439.

From these cases, two propositions may be laid down.

1. Encumbrances intervening between a prior encumbrance and the acquisition by the holder of that prior encumbrance of title to the fee, prevent a merger when the intervening encumbrances are outstanding encumbrances held by some third party a stranger to the title to the fee.

2. The merger of the prior encumbrance in such cases is prevented only as against the holders of the junior intervening outstanding encumbrances.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1906 :

In the adjudication, the learned trial judge has found and stated at length the facts of the case and given sufficient reasons to sustain the decree which was entered by the court below.   As said by him, the only question for determination is whether the mortgagee took subject to the ground rents or free and clear of them.   We think that the rents were merged in the fee when Frank acquired his mortgage from Stover in

1880. The defendant denies the merger because, as it alleges, (a) there was an intermediate estate between the title to the land and the rents in one Albert Soley; and (b) Stover held the rents in trust for Mary C. Farren, subsequently Mrs. Mary C. Penrose, now deceased.

It is settled that a ground rent does not merge by the purchase of land out of which it issues by the owner of the rent where there is an intervening estate in, or charge on, the land held by a third party, a stranger to the title to the fee. The alleged intermediate estate in Soley was a mortgage created by a former owner of the title to the ground in favor of Stover. After the latter's death the mortgage was found in his possession and on the back of it was written in his handwriting, in pencil, the words : " This mortgage is held for Albert Soley— Int. fr. Dec. 9/76." For the reasons stated by him, the learned trial judge held that the title to the mortgage was not shown to be out of Stover, the mortgagee, or in Soley, and that " any interest of any person other than the said Lewis Stover, or any trust in favor of any person, then existing in said ground rents was a secret interest or trust, of which the said Philip Frank had no notice or knowledge of any sort or kind whatsoever when he took the $3,000 mortgage upon the said premises upon June 1, 1880, as aforesaid." This language properly characterizes the title of Soley or any person other than Stover to the mortgage. Whatever may be the rights of Stover and Soley to the mortgage as between themselves, it is certain that it cannot avail the defendant as an intermediate charge or estate to defeat or impair the title of the plaintiff to the property in dispute. Neither he nor Frank, the mortgagee, through whose title he claims, had notice, actual or constructive, of the title to the Loughery mortgage being in a person other than Stover. A mortgagee is a purchaser, and, as said by Mr. Justice McCollum in Logan v. Eva, 144 Pa. 312, "it is well settled that a purchaser of land is unaffected by a secret trust or equity unknown to him, and that he may pass title thereto, untrammeled by the trust, to a person who has notice of it." "Secret liens or trusts," says Kennedy, J., in Brown v. Simpson, 2 Watts, 233, " are not to be encouraged upon any species of property whatever; but in no case can such a thing prevail as to real estate against an innocent purchaser of it for a full

and valuable consideration without notice, unless our recording acts are to be overturned and set aside."

The facts of the case negative the defendant's theory that Stover regarded himself as holding the Loughery mortgage in trust for Soley, and show that the mortgage was apparently worthless. Two years after his interest in the mortgage is supposed to have passed to Soley, Stover entered judgment in his own name on the bond accompanying the mortgage and issued execution thereon, which was stayed by the court on the allegation that the mortgage and bond were given without consideration. Soley was not a party to or known in these proceedings.

We think that under the facts disclosed here, Stover was the owner of the mortgage, the estate intermediate between the ground rents and the title in fee to the land acquired by him, and that consequently it did not prevent the merger of the rents in the fee.

Stover was the owner of the ground rents in 1874 and there was nothing of record to show that he did not own them in June, 1880, when Frank took from him the mortgage on which the property was sold and conveyed by the sheriff to the plaintiff. The first written evidence of Mary C. Farren's interest in the rents is the agreement of June 1, 1881, a year after Stover had mortgaged the land to Frank. There is no allegation that Frank had any knowledge of the ownership of the rents other than what the record disclosed, which was that the title was in Stover. When Frank took the mortgage on the land from Stover in 1880, with full covenants and without excepting therefrom the ground rents, the record owner of both the land and the rents was Stover. This under all the authorities was an extinguishment of the rents, or a merger of them in the title to the land held by Stover. The two estates had united in Stover and his act in conveying the title in fee was a declaration of his intention to extinguish the rents, and, as to him, it was irrevocable: Ames v. Miller (Neb.), 91 N. W. Repr. 250. There was, therefore, a merger of the rents in the title to the ground, and of this a grantee of the rents was required to take notice so far as third persons without notice were affected. He could occupy no higher ground than Stover himself. The record showed that the titles to the two estates were in Stover at the same time and that he then conveyed without exception

or reservation the title to the land in fee to Frank. This disclosed record notice that the ground rents had by the act of Stover, the owner thereof, been merged in the title to the land which he had conveyed to another, and therefore that the rents could not, in 1881, be conveyed by him to Miss Farren. She is presumed to know the law, and the facts appearing from the record, she is charged with notice of their legal effect. When, therefore, on June 1, 1881, she accepted Stover's written declaration that he would hold the ground rents for the use of Miss Farren, she is presumed to have known that the rents were extinguished, or "sunk or drowned," in the title to the land, and had passed with it beyond his control and ownership.

The fact that the sheriff sold the land subject to the ground rents did not prevent their subsequent merger, nor was it notice to Frank, the mortgagee, that they were subsisting encumbrances when he took his mortgage. The judgment on which the sale was made was a lien on Mrs. Loughery's title to the land which was subject to the rents, and the sale made by the sheriff on the execution was necessarily subject to the rents, and Stover, the purchaser, took the fee thus encumbered. Prior to the time the fee was thus vested in him, there was no merger, but when it was vested in him by the sheriff's sale, he being the owner of the rents, the two estates coalesced or united in him, and thereafter he could convey them to separate parties, or merge them and convey the fee, as he did, to one party. A judgment creditor would have a lien on the merged estates or fee, and a sale on execution would pass the whole title : Kreamer v. Fleming, 191 Pa. 534; s. c., 200 Pa. 414. In this case, the widow purchased from her children the fee in real estate, in which she had a dower interest. In speaking of the effect of the widow's purchase on her dower estate, the present Chief Justice delivering the opinion in the case says : "When she purchased the children's estate she purchased the fee they had, and her own life interest merged in it. It might be that as between the parties no merger was intended, though it is not apparent what interest they had to support such intention, but as to third parties no such intent could control the legal effect and operation of their acts. A conveyance by appellant (the widow) without express reservation of dower would have carried a clear fee, and she could not have set up against it the in-

tention of the parties in the conveyance to her.   So a levy and sale by a creditor on a judgment against her would have been of the fee. . . . There was no question of a discharge of dower or the sale of a life estate.   The dower had merged, the sale was by a creditor on a judgment, and was of the fee vested in the judgment debtor."

The learned judge was clearly right in holding that the trust in fee of Miss Farren in the ground rents was, as to the plaintiff, effective only from June 1, 1881, the date of the written declaration executed by Stover, and that the declaration was not competent evidence of the antecedent facts which it stated. It is indeed a singular proposition that two parties may, by a written agreement executed by them, make a statement of alleged facts therein contained evidence to defeat the title to real estate of a third party who had no knowledge of the agreement or its contents.   The fallacy of the proposition is so apparent that it needs no discussion.

On June 1, 1880, when Stover conveyed the land in mortgage to Frank, the former was the record owner of the title to the land and to the ground rents, as well as the holder of the Loughery mortgage.   There was therefore no intermediate estate or charge held by a third party between the rents and the fee, and there was nothing in the mortgage to indicate Stover's intention to prevent a merger of the rents in the title to the land.   It follows that the rents were extinguished, and that the fee in the land passed by the mortgage to Frank discharged of them, and is now held by the plaintiff by virtue of the sale made by the sheriff on a writ issued on the judgment obtained on the mortgage.

The decree is affirmed.

MITCHELL, C. J., and FELL, J., dissent.