Landis, Appellant, *v.* Robacker et al.

272

Argued October 5, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Henry MacDonald,* with him *W. Pitt Gifford,* of *Gun-
nison, Fish, Gifford & Chapin,* for appellants.

*Frank B. Quinn* and *Chas. H. English,* of *English,
Quinn, Leemhuis & Tayntor,* for appellees.

OPINION BY MR. JUSTICE KEPHART, November 27, 1933:
Landis, who dealt in real estate, sold on February 9,
1922, a partially completed house and lot to Robacker,
receiving, as part consideration, a mortgage for $3,500.
On August 21, 1922, Landis assigned the mortgage to

the Security Savings & Trust Company of Erie, delivering the mortgage to it. Robacker, on March 9, 1923, reconveyed the land covered by the mortgage to Landis, who agreed to satisfy the mortgage; the deed, however, contained a clause by which Landis agreed to pay the mortgage debt of $3,500 as part of the consideration for the reconveyance. On March 15, 1924, Landis conveyed this land by general warranty deed to the Murphys. Before this conveyance was made Landis informed the Murphys that the property was clear and free of liens and furnished an abstract of title to show this. Murphys had to borrow to make the initial payment. Landis, before the conveyance, informed the attorney who examined the title that he would take the mortgage off, that is, satisfy it. The money was advanced to Murphys on their mortgage. The Murphys paid to Landis the total purchase price of $5,400. The trust company held the assignment of the mortgage from August, 1922, to February, 1929, and then recorded it. A letter written to Murphy, notifying him of that fact, was the first notice that Murphy or Robacker had that the mortgage had been assigned and was not paid.

A scire facias was issued on the mortgage against Robacker and Murphy, and as this proceeding was against the land owned by the Murphys, they were the only persons directly interested in the result. The court below, after a trial before a jury, awarded judgment in their favor, and from that judgment the trust company appeals.

The first and primary question to be considered is the right of an assignee of a mortgage, who has failed to record his assignment, to foreclose the mortgage against land in possession of an innocent purchaser who has purchased from a mortgagee without notice of the assignment. A further question is that of estoppel as it relates to the assignee of the mortgage.

When the bank became the assignee of the mortgage, it became a purchaser for valuable consideration. Un-

less the assignee, directly or by conduct, authorized the assignor-mortgagee to use the mortgage as his own, it was not competent for the mortgagee to enter satisfaction of the mortgage on the record to its destruction or do acts equivalent thereto. To have attempted to do so would necessarily have been a fraud on the assignee: Roberts v. Halstead, 9 Pa. 34, 35. This is undoubted as between the assignor-mortgagee, the assignee and the mortgagor. When the rights of innocent third parties have intervened, a different situation may present itself.

It was stated in Kinch v. Fluke, 311 Pa. 405, at page 409: "The assignment of a mortgage by an instrument duly executed, or the assignment of such mortgage on the margin of the mortgage record is not such legal notice to the mortgagor as will preclude him from setting up payments made by him to the mortgagee before he has actual notice of the assignment...... In order to complete the assignee's right with respect to such an assignment, the law requires actual notice be given to the mortgagor of the assignment. The recording act imposes no duty on the mortgagor to search the record for the purpose of ascertaining whether the mortgagee has assigned the mortgage. To do so would impose too great a burden on the mortgagor."

Payments to a mortgagee without notice of the assignment are valid: O'Maley v. Pugliese, 272 Pa. 357. It is always competent to show payment no matter who owns the mortgage, and this was done by Robacker. The jury found as a fact that the mortgage was paid. This would dispose of the case, but as appellant urges that the deed through which Robacker claims payment contains language that could be interpreted otherwise and the verdict of the jury was ineffective, we will further consider the questions involved.

While it is incumbent on the assignee to give the mortgagor notice of the assignment of the mortgage in order to complete the contract between assignor and assignee, the question as to how far that rule applies as to inno-

cent subsequent purchasers or succeeding title holders of the property who have become liable for the mortgage debt, has not been decided by this court. Nor has the question been decided as to the liability of such purchasers to pay the debt when they have bought from a mortgagee who is also the owner of the fee, without notice of the assignment of the mortgage. Had there been no assignment of the mortgage, there is no question but what there would have been a merger in fact, for where one who holds a mortgage, either as mortgagee or assignee, becomes the purchaser of the land covered by the mortgage, the latter is merged in the title. The mortgage is extinguished by law: Brown v. Simpson, 2 Watts 233; Koons v. Hartman, 7 Watts 20; Henderson, Hull & Co. v. Stryker, 164 Pa. 170; Frank v. Guarantee Trust, etc., Co., 216 Pa. 40, 51.*

It has been stated, however, that merger is a question of intention, and where the intention is to keep the mortgage alive there will be no merger: Moats v. Thompson, 283 Pa. 313; Moore v. Hbg. Bank, 8 Watts 138; Richards v. Ayres, 1 W. & S. 485; but such intention must be manifest from the surrounding circumstances. Appellant says the provisions in the deed to Landis show that no payment could have been intended; that the deed was made subject to the mortgage which Landis was to pay, and that Murphy should have ascertained whether the mortgage was paid or not. Suppose this to be true, of whom would Murphy inquire to ascertain if the mortgage was paid? There were two persons on the record from whom this information might be procured: Robacker, the mortgagor, and Landis, the mortgagee. Robacker, who had a personal interest in its being paid, says that notwithstanding the deed the agreement was to the effect that the mortgage was part of the consideration for his reconveyance to Landis and was to be con-

* The case of Day v. Day, 3 Pennypacker 294, stands on its own facts and is directly contrary to other cases. Moreover the facts in the instant case are different in important features from those in it.

sidered as paid. Landis, the mortgagee, and, from the record, the person vitally interested, tells his grantee that the mortgage was paid, the land free of encumbrances and everything clear. As stated by the court below, Landis said the debt was satisfied. Murphy, in examining the title, or Evans, the attorney who examined the title, found nothing but the mortgage standing in the name of Landis, the mortgagee, and the then owner of the property. The record undoubtedly shows an open mortgage unpaid. It also shows that Landis, the mortgagee, was the owner of the mortgage, and he stated it was paid. The purchaser had no means whatever of knowing whether he was lying, or that any other person had any interest in the mortgage. There was no other source from which the purchaser could secure his information. It is urged that Murphy should have demanded production of the mortgage. True he might have done so but we need not decide this interesting question, for there are other circumstances, later discussed, which bear heavily in exculpating him in connection with this failure to require production of the mortgage.

There is a fundamental, legal principle which works its way into situations of this kind. The assignment in possession of the assignee, while evidencing a valid interest between the parties directly affected, was, as to Murphy, an innocent purchaser, a secret lien or interest. As stated in Brown v. Simpson, supra, at page 245: "Secret liens or trusts are not to be encouraged upon any species of property whatever; but in no case can such a thing prevail as to real estate against an innocent purchaser of it for a full and valuable consideration without notice, unless our recording acts are to be overturned and set aside." This statement is reiterated in Frank v. Guarantee Trust Co., supra, at page 52, where the court quotes from Logan v. Eva, 144 Pa. 312: "it is well settled that a purchaser of land is unaffected by a secret trust or equity unknown to him, and that he may

pass title thereto, untrammeled by the trust, to a person who has notice of it." The instant case bears some analogy to Brown v. Simpson, supra. In that case, in 1817 S. mortgaged property to BA. to secure the payment of several bonds. BA. assigned one of the bonds to F., who later assigned it to X. In July, 1819, X. obtained a judgment against S. on the bond. Prior to that time, however, or in June, 1819, a bank secured a judgment against S., and the property of S. covered by the mortgage, was sold to BA., the mortgagee named in the mortgage of 1817. The sheriff's deed to BA., however, recited that it was subject to that mortgage. Later the title became vested in Dr. Simpson, and on his death, in his son, William. X. pursued his judgment by scire facias, and the lands in the possession of William Simpson were levied on for sale. Simpson had this judgment opened and the question arose as to whether or not there was a merger when the property covered by the mortgage was conveyed by sheriff's sale under another judgment to the mortgagee. The court held there was a merger and the mortgage was extinguished, though the sale under which William Simpson claimed was made to BA. subject to the mortgage.

A similarly analagous case is Frank v. Guarantee Trust Co., supra.* While there may be some distinguish-

---

* In 1874 S., the owner of land, conveyed it to F., reserving a ground rent. F. later on conveyed the premises to L. L. executed her bond to S. conditioned for the payment of $5,000 secured by a mortgage on this land, but the mortgage was made subject to the ground rents. D. obtained judgment against L. which was assigned to S. S. sold the land on this judgment and at the sheriff's sale S. bought the property subject to the above mentioned ground rents. S. in 1880 borrowed from Frank, giving a mortgage on the land to secure the debt, the mortgage covering the same property as the ground rents and the mortgage of L. covered. No mention is made in this mortgage as to ground rents or the other mortgage. At the time the premises were mortgaged to Frank, the ground rents had been transferred by an unrecorded instrument for the benefit of Mary Penrose. The mortgage from L. was also for the use of the same person. There was nothing of record to show these outstand-

ing features in these cases, the controlling principles should govern the instant case.

We return to the circumstances on appellants' part which are fatal to its present contention. Landis perpetrated a fraud on both appellant and appellee, but who made it possible for such fraud to be perpetrated? Which of the parties by a very simple act could have or should have prevented it by placing the assignment on record? Appellant bought the mortgage in good faith and appel-

---

ing interests through S. S. died and F. instituted proceedings to foreclose his mortgage, the sheriff sold the property to F.'s son. In a contest between the son and Mary Penrose, as to ground rents and the mortgage, this court said at page 53: "Stover was the owner of the ground rents in 1874 and there was nothing of record to show that he did not own them in June, 1880, when Frank took from him the mortgage on which the property was sold and conveyed by the sheriff to the plaintiff. The first written evidence of Mary [Penrose's]......interest in the rents is the agreement of June 1, 1881, a year after Stover had mortgaged the land to Frank. There is no allegation that Frank had any knowledge of the ownership of the rents other than what the record disclosed, which was that the title was in Stover. When Frank took the mortgage on the land from Stover in 1880, with full covenants and without excepting therefrom the ground rents, the record owner of both the land and the rents was Stover. This under all the authorities was an extinguishment of the rents, or a merger of them in the title to the land held by Stover...... The record showed that the titles to the two estates were in Stover at the same time......

"The fact that the sheriff sold the land subject to the ground rents did not prevent their subsequent merger, nor was it notice to Frank, the mortgagee, that they were subsisting encumbrances when he took his mortgage. [This follows Brown v. Simpson, 2 Watts 233, and would have a decided effect here on the clause in the deed from Robacker to Landis where he assumed to pay the mortgage.]...... Prior to the time the fee was thus vested in him, there was no merger, but, when it was vested in him by the sheriff's sale, he became the owner of the rents, the two estates coalesced or united in him, and thereafter he could convey them to separate parties, or merge them and convey the fee, as he did, to one party. A judgment creditor would have a lien on the merged estates or fee, and a sale on execution would pass the whole title: Kreamer v. Fleming, 191 Pa. 534; s. c., 200 Pa. 414": 216 Pa. 40, 53-54.

lee did likewise as to the real estate. Did appellant unwittingly do anything to facilitate the perpetration of this fraud by Landis? As stated above, Landis had been dealing in real estate, borrowing money and pledging mortgages by assignment; evidently he conducted some considerable business. He took to the bank assignments of mortgages and, according to the testimony of the bank, he was permitted to treat these mortgages very much as he pleased; he was allowed to "deal with the mortgages largely according to his convenience." No doubt because of this authorization, the bank did not follow the usual practice of recording assignments. Landis did deal with the mortgages as suited his convenience. It suited him to deal with the mortgage by making the representation of payment to Murphy. The bank thus unwittingly permitted Landis to overreach his vendee. Murphy relied on his representation. When Landis represented to Murphy that these debts were paid, he was dealing with the mortgage. He was procuring a benefit. At that time he may have expected to make good, but, if he did not, the bank should not be heard to complain against an innocent purchaser who has been misled by its act.

We have examined with great care the several cases cited by appellant. The two cases, Purdy v. Huntingdon, 42 N. Y. 334, and Curtis v. Moore, 152 N. Y. 159, did not involve the very important feature present in the instant case of the purchaser and the attorney inquiring of the grantor-mortgagee as to whether or not a mortgage still existed and the debt unpaid. In both cases the purchaser had no actual knowledge of the existence of the mortgage. In such a situation it may well be that the purchaser is held strictly to the recorded title and that any outstanding mortgage would bind the land even in his hands.

The facts in the case of Leonard v. Leonia Heights Land Co., 81 N. J. Eq. 489, are different from those in the present case to a substantial degree. Therein the

purchaser did not take his deed from the mortgagee, but rather from a grantee of the mortgagee. The purchaser knew of the existence of the mortgage and asked the mortgagee for it. It was told that he would obtain it, but it relied upon the fact that its grantor was a mere dummy of the mortgagee, and that the mortgage was a dummy mortgage. The New Jersey court in its dealing with this matter implies that the outcome might have been quite different had the purchaser bought directly from the mortgagee after inquiry as to the status of the mortgage.

For the reasons we have stated, we are brought to the conclusion that the decision of the court below was proper.

Judgment affirmed.