## In re RUPP.

### No. 19254.

District Court, E. D. Pennsylvania.

Oct. 28, 1940.

Taylor, Schrader & Riskin, of Bethlehem, Pa., for petitioner.

William S. Hudders, of Allentown, Pa., for trustee.

Alfred K. Hettinger, of Allentown, Pa., for Faust.

KIRKPATRICK, District Judge.

In 1927 a certain William D. Cassone was the owner of a house in Allentown, Pennsylvania. On March 24 of that year he executed two mortgages upon the property, each in the amount of $4,500, one to Charles S. Faust and one to Charles F. Sycher. The mortgages were both entered of record on March 31, at 3:19 P. M., and thus acquired an equal lien position.

888

The Sycher mortgage was assigned on October 1, 1930, to Lawrence H. Rupp, the bankrupt. On December 17, 1930, Rupp acquired the fee of the mortgaged premises. On March 2, 1931, he recorded the assignment to himself of the Sycher mortgage.

Rupp became bankrupt in 1936 and subsequently died.

This contest arises upon the trustee's petition to sell the mortgaged premises clear of liens, and it is between the present owner of the Faust mortgage and the creditors of the bankrupt. The question involved in this review of the referee's order (which directed that the trustee in bankruptcy be excluded from participating in the proceeds of the sale) is whether the Sycher mortgage was extinguished by merger when Rupp, to whom it had been assigned, acquired the fee.

■■ There is no disagreement among the authorities about the general rule that, where a mortgagee or an assignee of a mortgage acquires an interest in the mortgaged property, the question whether or not a merger and extinguishment takes place depends upon the intention of such person. Some authorities take the view that the doctrine of merger is not favored and that, in the absence of evidence of an intention that there should be a merger, an intention to keep the mortgage alive will be presumed. The Pennsylvania Supreme Court in a recent decision (Landis v. Robacker, 313 Pa. 271, 275, 169 A. 891, 893) states the doctrine differently. The court there said, "It has been stated, however, that merger is a question of intention, and, where the intention is to keep the mortgage alive, there will be no merger * * * ; but such intention must be manifest from the surrounding circumstances." However, the distinction is not of very great importance since, again, there is general agreement that the fact that it is to the interest of the owner to keep the mortgage alive is always evidence of an intention against merger. This is called a presumption (Fair Oaks B. & L. Ass'n v. Kahler, 320 Pa. 245, 249, 181 A. 779) but it is in reality a fact inference which may be drawn from one important circumstance connected with the acquisition of the property. It is by no means conclusive. If this and other circumstances pointing in the same direction are met by stronger evidence of an express intention that a merger was to take place, the courts will effectuate that intention.

In the present case, it was unquestionably to Rupp's interest that the mortgage should be kept alive after his acquisition of the property. Only by keeping it alive could he keep upon equal terms with the owner of the Faust mortgage in the event of foreclosure by them. Another circumstance strongly indicative of intention was the fact that not until after he had become the owner of the fee, did he place upon record his assignment of the mortgage. Mr. Rupp was a very well-informed lawyer and almost certainly knew that he would find himself in a disadvantageous position if intervening rights of innocent third parties should accrue while he held his assignment unrecorded.

The referee seems to have been convinced by evidence produced that what occurred was that Rupp, who appears to have represented Cassone when he placed the mortgages, in some way gave the Fausts to understand that not only would their mortgage be a first mortgage but, specifically, that it would not be a joint mortgage, that his subsequent proceedings were in pursuance of a subsequently formed purpose on his part to make this commitment good, and that he became bankrupt before he had fully consummated this purpose, at least of record. The referee felt that this intention should now be translated into the award of a first mortgage status to the Faust incumbrance.

The evidence upon which the referee based his conclusion as to Mr. Rupp's intention justifies no more than a hypothesis. If Rupp did make such a representation or commitment to Faust—a very doubtful matter even taking the evidence at its full value—then he may have acquired the Sycher mortgage and subsequently the property itself with the intention of extinguishing the Sycher mortgage and trying to protect himself in the transaction by the equity of redemption. But there is really no evidence that he did so intend. The fact that some time after he became the owner of the property he paid over to Faust all the rents for a period of about a year, goes no further than to show that he did not want foreclosure proceedings started and has no bearing upon the question whether or not he considered his own mortgage alive. The same can be said of the fact that he made the fire insurance

policy payable to Faust to the extent of his interest.

On the other hand, as has been said, Mr. Rupp was a lawyer. In addition, he was a man of large business interests and accustomed to doing things in a direct and practical way. The direct and practical way to accomplish what the referee finds his intention to have been was to have satisfied his mortgage as soon as he became the owner of the property. Instead of doing this he took care to place his assignment on record—a useless proceeding unless he intended either (a) to satisfy the mortgage thereafter, which he did not do, or (b) to give record notice that his mortgage was still in existence.

■ Under all the circumstances I feel that there is not sufficient evidence in favor of intention to merge to overcome the very strong circumstantial evidence against it. In fact, I think that there is no real evidence at all of such intention. The order of the referee is therefore reversed, and the referee is directed to admit the trustee to distribution of the proceeds of the sale of the premises.