## ‖ Koons *against* Hartman.

If the plaintiff in a judgment become the owner of the land upon which that judgment is a lien, the lien thereby becomes extinct by operation of law; and no subsequent sale of the land by the sheriff, upon that judgment, will vest a title in the purchaser.

If a *fieri facias* be issued upon such a judgment, it is not incumbent on the terre-tenant to come into court to have the process set aside. After a sale of the land under it, he may defend himself in ejectment against the purchaser, on the ground that the lien was extinct.

In ejectment, a verdict and judgment in a former trial between the same parties, for the same land, may be given in evidence. So also of a non-suit.

ERROR to the common pleas of *Berks* county.

Isaac Koons against Michael Hartman. Ejectment for ninety-four acres of land.

Each party claimed title under John Snell. The plaintiff gave in evidence a judgment entered 15th April 1816, Jacob K. Boyer against John Snell, for 360 dollars; a *fieri facias* and an *alias fieri facias* to January term 1821, which was levied upon the land in dispute; and upon a *venditioni exponas* to April term 1823, the property was sold to Isaac Koons, who at that time was one of the administrators of Isaac Boyer, who, it was alleged, was the owner of the judgment by assignment, when the sheriff's sale was made. The sheriff's deed to Isaac Koons was dated 7th April 1823.

The defendant offered the following evidence, to show that the judgment of Jacob K. Boyer was not a lien on the land in question, at the time of the sheriff's sale to the plaintiff, and for other purposes, viz.:

A deed dated the 5th of January 1818, from the said John Snell, to Jacob K. Boyer, for the said premises, for the consideration of 8000 dollars, acknowledged on the same day, and recorded the 21st of April 1830.

Also, a deed dated the 23d of March 1819, from Jacob K. Boyer and wife, to Frederick Weitzell, for the same premises, for the consideration of 7647 dollars, acknowledged same day, and recorded the 21st of April 1830.

Also, a deed of assignment, dated 30th of May 1820, from Frederick Weitzell to Jacob Weitzell, Henry Reeser and Thomas O'Brien, of all his real estate, in trust for the benefit of his creditors, acknowledged same day, and recorded May 31, 1820.

Also, a deed dated 15th of February 1822, from Jacob Weitzell, Henry Reeser and Thomas O'Brien, assignees of Frederick Weitzell,

[Koons v. Hartman.]

to George Adam Wicks, for the said premises, for —— dollars, acknowledged same day, and recorded the 21st of April 1830:

Reciting, "that the said Jacob Weitzell, Henry Reeser and Thomas O'Brien, for and in consideration of the relinquishment of a debt of 5147 dollars; besides interest thereon accrued, due by the said Frederick Weitzell to the said George Adam Wicks, and secured on the aforesaid premises by mortgage, &c., have granted, bargained, sold, released," &c. ·

And also, a lease from Matthias S. Richards, administrator with the will annexed of George Adam Wicks deceased, to the defendant, Michael Hartman, for the premises, dated 25th November 1826, and renewed to this day.

And also offered to prove that notice was given at the sheriff's sale, by George Adam Wicks, of his title to this land.

The plaintiff's counsel objected to the evidence thus offered by the defendant.

The court overruled the objection, and admitted the evidence, to which decision of the court the plaintiff excepted.

The evidence was then given.

The defendant further offered in evidence the record of an action of ejectment for same land, in the circuit court for Berks county, of September Term 1829, No. 1, between Isaac Koons, plaintiff, and Michael Hartman, defendant, and a non suit on the 26th of April 1830.

To which the plaintiff objected, and the court overruled the objection, and admitted the evidence, to which decision of the court the plaintiff excepted.

The defendant, by his counsel, further offered in evidence the record of an ejectment for same land, to January term 1834, No. 27, in the common pleas of Berks county, between the same parties; and verdict and judgment for the defendant, the 16th of January 1835, and writ of error filed.

To which the plaintiff objected, and the court overruled the objection, and admitted the evidence, to which decision of the court the plaintiff excepted.

There was no evidence in the cause to show that Jacob K. Boyer was not the owner of the judgment under which the plaintiff claimed title at the time he became the owner of the land, by deed · from John Snell, dated the 5th January 1818. There were several bills of exception, which involved matters of fact, rather than questions of law. That part of the opinion of the court which involved the principal question in the cause, and to which exception was taken, was as follows:

Banks, President.—"Boyer became the owner of the fee, when his judgment was a lien; he sold the fee, unincumbered, on the 23d of March 1819. There is no evidence that he had assigned his judgment before he bought the land, nor is there any evidence that he had assigned the judgment, until after he had sold the land to

VII.—C

[Koons v. Hartman.]

Weitzell. The deed from Boyer to Weitzell is their written contract; it is to that we are to look to ascertain what the terms of the sale were. In the deed the price is stipulated, and appears to have been fully paid. There is no proof that Weitzell was to pay more money than that mentioned in the deed. Under this state of facts, what becomes of Boyer's lien on this land? Why keep the lien up, when he owned the land and the judgment? What legal purpose could it answer? What just interest could it preserve? Could he, or would he, sell his own land, to pay his own debts? Why should this lien be kept up against his vendee? The vendee had received a clear deed. This deed passed all the right, title, interest or claim of Boyer, in or to the land. The vendee had paid all he had agreed to pay. Boyer could not have compelled him to pay this judgment— he would have been estopped by his deed; nor can his assignee, by assignment after the deed, compel him to pay it. The vendee did not agree to pay this judgment in addition to what was mentioned in the deed, nor had he, at that time, any notice that the judgment had been assigned.

"Boyer told him that he could not enter satisfaction on it. This was all right, for it had not been paid. He still held the judgment against Snell, and might have collected the money of him. Boyer sold the land, as I suppose, for its full value, and he could not compel the vendee to pay more than he had agreed to pay for it. The sum is contained in the deed, and it is not pretended that this amount was not fully paid.

"Boyer and his vendee might have continued the lien of the judgment by agreement. I cannot see any thing in the evidence which manifests that intent on their part. Such an intention should be clearly demonstrated by the agreement or acts of the parties. When Boyer bought and sold the land, the lien would sink, unless something was done to keep it up. Nothing was done to keep it alive, and I do not know any beneficial or just purpose for which it should be kept up. The conclusion to which my mind comes, is, that Weitzell, by the deed of Boyer, took the land discharged from the judgment. This conclusion is inevitable—it cannot be resisted. A proceeding on the part of Boyer to keep the lien on his land, would have been a novelty. Jacob K. Boyer would have been plaintiff, and the same Jacob K. Boyer defendant, as terre-tenant of the land. Jacob K. Boyer, plaintiff, would have been praying the court to continue the lien of his judgment on the lands of himself. This would tend to show the absurdity of a man's judgment being a lien on his own land. There is no evidence in the cause which shows that Boyer had assigned the judgment before he bought the land, nor before he sold the land."

*Hoffman* and *Greenough*, for plaintiff in error. The defendant could not gainsay the judgment against his vendor. 2 *Watts* 143,

[Koons v. Hartman.]

147. The proceeding upon a *fieri facias* is a matter *in pais,* of which the terre-tenant is bound to take notice. It is in effect like a *scire facias* upon the judgment. 2 *Binn.* 218; 1 *Penns. Rep.* 278; 2 *Rawle* 37; 5 *Binn.* 273; 4 *Mass. Rep.* 483; 17 *Serg. & Rawle* 327; 5 *Johns. Rep.* 363; 5 *Watts* 458; 18 *Ves.* 394; 1 *Watts* 424; 3 *Johns. Rep.* 20; 13 *Serg. & Rawle* 203; 1 *Rawle* 226; 2 *Serg. & Rawle* 430; 3 *Caines's Rep.* 267; 1 *Bald.* 271; 1 *Ves. Jun.* 194; 2 *Cowen* 284.

*Strong* and *Mallory, contra.*—That the lien of the judgment was merged in the title, 3 *Johns. Chan.* 53; 6 *Johns. Chan.* 393, 417; 4 *Watts* 457; 4 *Kent's Comm.* 102; *Doug.* 771. The plaintiff is estopped from claiming the judgment to be a lien, 2 *Watts* 233, 242. The terre-tenant may defend in ejectment, as he might have done upon a *scire facias,* if served upon him. 5 *Watts* 355; 1 *Serg. & Rawle* 548; 1 *Watts* 491; 2 *Binn.* 231; 2 *Rawle* 268.

The opinion of the Court was delivered by

KENNEDY, J.—Both parties derive their claim to the land in ques tion from John Snell, who was the owner and seised thereof in fee. The plaintiff, who was also the plaintiff below, claims it as a pur-chaser at sheriff's sale, made under an execution, sued out upon a judgment in favour of Jacob K. Boyer, after it had been assigned by Jacob K. Boyer to Isaac Boyer, against Snell. The process under which the land was seized, was issued for the use of Isaac Boyer from the common pleas of Berks county, wherein the judgment had been obtained, to August term 1820: but Isaac Boyer dying before the execution of the process was completed, the plaintiff in this action, in conjunction with the widow of the deceased, administered upon his estate, and became the purchaser of the land, at a sale thereof made afterwards by the sheriff, under a writ of *venditioni exponas* issued to April term 1823. At this term the sale was perfected by the execution and acknowledgement of the deed, by the sheriff conveying the land to the plaintiff. This having been all shown, by the plaintiff's evidence, to the court and jury, the defend-ant then offered evidence to prove that on the 5th of January 1818, upwards of two years before Isaac Boyer appeared to have any interest in the judgment under which the land was sold, John Snell, the defendant in the judgment, and then owner of the land, by his deed, sold and conveyed it in fee to Jacob K. Boyer, the plaintiff in, and then owner of the judgment, for the consideration of 8000 dol-lars: and that Jacob K. Boyer again, on the 23d day of March 1819 (upwards of thirteen months before the judgment was marked on the docket for the use of Isaac Boyer, or the latter appeared to have any claim to it), by his deed, sold and conveyed the land in fee, clear of all incumbrances, to Frederick Weitzell, in consideration of 7647 dollars; that Frederick Weitzell, by his deed, dated the 30th of May 1820, sold and conveyed the land again in fee to Jacob

[Koons v. Hartman.]

Weitzell and others, who, by their deed, sold and conveyed the same to George Adam Wicks; and upon George A. Wicks dying afterwards, the defendant here came into the possession of the land under a lease thereof from the representatives of George A. Wicks. And further, that the plaintiff purchased the land at the sheriff's sale, after actual notice given to him at the time of the sale, by George A. Wicks, of his right and title to it. This evidence was objected to by the counsel for the plaintiff, but admitted by the court; and the opinion of the court, in this behalf, was excepted to; which forms the ground of the first error assigned.

It is contended, first, that the evidence ought not to have been received, because if Snell, the defendant in the judgment and execution, had continued to have been the owner of the land at the time of the sheriff's sale, he could not have gainsaid the validity of it; and inasmuch as the defendant derives his claim to the possession of the land from Snell, he cannot be considered as standing on any better footing than Snell himself would, had he not parted with the land, and therefore he is concluded by the sale. Then again, in the second place, it is objected that, even if the defendant or Wicks, under whose representatives he holds the possession, could have been relieved at any time against the judgment, or the sale of the land made by the sheriff under it, he is now too late: that he ought to have made his application to the court when the process, under which the sale was made, was sued out, before the sale was approved and confirmed by the court. We, however, think that neither of these propositions is tenable.

In regard to the first, it must be observed, that although it may be said that the defendant claims possession of the land, ultimately, from Snell, yet he claims it, intermediately, through Jacob K. Boyer himself, the plaintiff in the judgment, who had a right to sell the land discharged from it and its lien, even had there been any at the time; and having done so in effect by the very terms of his deed, it must be so considered. Then, after having thus sold the land, he could not claim to levy the judgment out of it; and if he could not, it is equally clear that his assignee of the judgment could have no other rights than he had, in this respect, himself. Besides, he must be viewed as having held the land, from the moment he became the owner of it, entirely free from all lien on account of the judgment; because, being the owner (as it most clearly appears from the evidence) of the judgment, when he bought the land from Snell, the defendant in the judgment, the lien of the judgment thereby became extinct through operation of law; there being no agreement made, or intention manifested at the time, to continue it for any purpose whatever. And, indeed, having become the absolute owner of the land, and being so also of the judgment, at the same time, it is not very easy to conceive why the lien should have continued to exist longer: because it would be idle, if not perfectly absurd and ridiculous, for a creditor to wish that his own property should be bound

[Koons v. Hartman.]

for the payment of a debt owing to himself; it is even difficult, if not impossible, to conceive how this could be. The lien of the judgment, then, having thus become extinct, it cannot be imagined that the subsequent transfer of either the judgment or the land should revive it again, so as to affect the purchaser of the latter.

Next, as to the second ground of objection to the admission of the evidence, it is argued that the suing out of the *fieri facias*, and the seisure of the land under it, were equivalent to the suing of a *scire facias quare executio non, &c.*, and a service thereof on George A. Wicks, who was, as it appears at the time, terre-tenant of the land: and because he did not come into the court from which the *fieri facias* issued, either upon the return of the seizure of the land, or, at furthest, before the confirmation of the sheriff's sale, he is now concluded. But this is all fanciful; there is no analogy, in this respect, between a *scire facias quare executio non*, which is served upon the terre-tenant, and a *fieri facias* and a seizure, in virtue thereof, of the land. The latter is purely a judicial writ, and an authority to carry into effect the judgment of the court, that is, to levy and make the amount of the money mentioned in the judgment, which is recited in the writ, without requiring any notice thereof, in any event, to be given to the terre-tenant. The defendant mentioned in the *fieri facias* is the only person the sheriff has to deal with, in executing the writ; and if the defendant does not show, or the sheriff cannot find, personal property sufficient to levy on, then he is required to levy the money out of the real estate of the defendant, if to be found within his bailiwick. But a *scire facias*, though a judicial writ, also partakes, in some degree, of mesne process; at least, so far as to allow the party a day in court, and to plead to it. On a *fieri facias*, however, neither the defendant nor the terre-tenant has any day in court. But even in the case of a *scire facias*, the terre-tenant is not concluded by a judgment awarding execution therein, unless it appear that he had notice of the writ, or it was served upon him in due time, so as to have afforded him the opportunity of making a defence. And, to prevent injustice being done to him, for want of such opportunity, he will be permitted to make the same defence on the trial of the ejectment brought against him by the purchaser of the land at sheriff's sale, that he might have set up in the *scire facias*. Nace *v.* Hollenback, 1 *Serg. & Rawle* 548; Young *v.* Taylor, 2 *Binn.* 231; Mather *v.* Clark, 1 *Watts* 491; Walters *v.* Pratt, 2 *Rawle* 268; Cowen *v.* Getty, 5 *Watts* 535. We therefore think the court were right in admitting the evidence.

The second error includes, first, an exception to the opinion of the court, in admitting the record of a former ejectment, brought by the plaintiff, for the same land, against the defendant, wherein, upon trial, a verdict and judgment were rendered for the defendant. The admission of this evidence is sanctioned by every day's practice; and though not conclusive, it is only because it has been made an exception to the general rule in this respect, that it is not so. But it is

[Koons v. Hartman.]

clearly persuasive evidence, and in a case of doubtful cast, from all the other evidence, it ought to be considered sufficient by the jury to turn the scale in its favour.

The second exception in this error is to the opinion of the court in admitting the record of a former ejectment, brought by the same plaintiff, for the same land, against the defendant, wherein, after the jury had been called and sworn, the evidence all given to them, on both sides, and the charge of the court delivered thereon to them, the plaintiff took a *non suit*. Now although a non suit has not that conclusive effect, generally, in any case, that is given to a verdict and judgment rendered upon it, yet upon principle it may be fairly regarded as some evidence against the party suffering it: and though in most cases the effect of it, as evidence against the party, may possibly be repelled by the attending circumstances, yet it may very properly, in some cases, be entitled to some weight. It carries with it an implied admission on the part of the plaintiff at the time, that he did not think he had made out such a case as would insure him a verdict in his favour. We therefore think it was admissible.

The third error has been given up by the counsel for the plaintiff in error, and not insisted on, as to H. W. Smith's evidence; but was insisted on as to Henry Betz's evidence. We, however, are unable to perceive any good reason why the evidence of Henry Betz ought to have been rejected. It is not denied that he was competent as a witness; and the subject matter of his evidence appears to have been relevant. Among other things, it rather tended to prove that Jacob K. Boyer had, from the part he acted in regard to the sheriff's sale, an interest in the purchase, and if so, no credit ought to be given by the jury to his testimony which he had given for the plaintiff.

The fifth bill of exception, which is included in the fourth error, is insisted on, but the sixth, which is also included, is abandoned. The mortgage mentioned in the fifth bill of exception was offered in evidence, as appears by the bill, for the purpose of proving that the deed of conveyance from Jacob K. Boyer and wife to Frederick Weitzell, though dated on the 10th of April 1819, was not delivered until the 15th of that month; and likewise to show, that according to the understanding between Jacob K. Boyer, Weitzell, and G. A. Wicks, the judgment against Snell in favour of J. K. Boyer, upon which the land was sold by the sheriff, was to continue. No doubt his judgment, as well as the other small one, was to continue and be in force until paid or satisfied in some way. This the defendant does not pretend to deny; in fact, he admitted it distinctly on the trial. But if this evidence were offered to prove that the lien of either one or both of these judgments continued upon the land, notwithstanding the purchase of it by J. K. Boyer, of Snell, it is clear that neither it nor any other evidence given, tended in the slightest degree to prove such fact. It is also perfectly clear, as has been shown already, that after Boyer bought the land of Snell, the

[Koons v. Hartman.]

lien of these judgments became extinct, and therefore they could be considered no longer binding upon it: and as to the deed being actually delivered on the 15th of April 1819, and not upon the 10th of that month, it was totally immaterial to the issue tried in this cause, which of these days it was delivered on; so that we think the evidence was properly rejected.

The fifth error has been argued and insisted on with a good deal of earnestness; but it is difficult to discover any plausible, much less good ground for its support. That part of the charge complained of in this error is in these words: "there is no evidence in the cause which shows that Boyer had assigned the judgment before he bought the land, nor before he sold the land." The evidence particularly, and indeed, I believe, wholly, relied on, to show that the president judge of the court erred in giving this direction to the jury, is that of Jacob K. Boyer, the assignor of the judgment, as taken down in writing on a former trial, and testified to by Mr Hoffman, one of the counsel for the plaintiff. It is somewhat different, though perhaps only verbally so, from the notes thereof, as taken at the same time, by Judge Mallory, who presided in the court on that trial, and testified also to the correctness of his notes. According to Mr Hoffman's notes, Jacob K. Boyer testified as follows:

"At the time I entered satisfaction on the large judgment against John Snell, Weitzell and Wicks were present at the prothonotary's office with me. The two judgments which I had previously held against Snell, one for 330 dollars, and the other for 360 dollars, and transferred to Isaac Boyer, in satisfaction of a debt I owed him, amounting to 2000 dollars. They were shown to Weitzell and Wicks. Weitzell asked me for what they were given; I told them they were for other transactions. They observed they were small, and supposed that Snell's other property would pay them: I told them I could not enter satisfaction on them. They were transferred after 1816, but cannot tell how long after." According to Judge Mallory's notes, Boyer testified thus: "At the time I entered satisfaction in the large judgment against John Snell, Frederick Weitzell, and George Adam Wicks were in the prothonotary's office. The two judgments which I held previous to that, against John Snell, one for 330 dollars, the other for 360 dollars, they were showed to Weitzell and Wicks at the time. Weitzell asked me if they were for the same transactions: I told him no, they were for a different transaction. They said they were small sums, and they supposed Snell's other property would pay them. I told them I could not enter satisfaction on them. Snell at that time owned two houses in this town [meaning Reading]. I owed Isaac Boyer a debt, after 1816, of upwards of 3000 dollars: I gave him a bond, with my father as security, for 2000 dollars. They were transferred to Isaac Boyer for the debt after 1816; can't tell the time." The time of entering satisfaction on the large judgment, to which Boyer refers, appears from the record to have been the 15th of April 1819; and it is said,

and insisted on too, that Boyer here testified to the fact of his having assigned the judgments to Isaac Boyer before the time of his entering satisfaction on the large judgment.   But the 15th of April 1819 was more than fifteen months after Jacob K. Boyer had bought and obtained a deed of conveyance for the land from John Snell, which extinguished the liens of Boyer's judgments on it at that time against Snell.   And even supposing that this evidence might have been fairly understood by the jury as going to prove that the assignment of the judgments to Isaac Boyer was made before the 15th of April 1819, yet it is clear that they could not have extended it beyond the 5th of January 1818, the time at which J. K. Boyer received his deed of conveyance from Snell, and the liens of the judgments became thereby extinguished : nor could they, for the purpose of divesting an innocent · purchaser for valuable consideration, of his rights to the land, have considered it as extending to any other than the shortest possible time ; for instance, at most, the day before the 15th of April 1819, so as barely to satisfy the words of the witness.   That Weitzell and Wicks were innocent purchasers, as regards the pretended assignment of the judgments, cannot be questioned from the evidence ; for J. K. Boyer, although he says they were shown to Weitzell and Wicks, does not even insinuate that they were spoken of as being liens on the land sold by him ; nor that he had assigned them to Isaac Boyer or any other person.   But upon a fair construction of the testimony of J. K. Boyer, it could not, with any propriety, have been understood by the jury as tending to prove that Jacob K. Boyer had assigned the judgments, either before he bought the land of Snell, or sold it again to Weitzell ; for according to his testimony, as taken by both Mr Hoffman and Judge Mallory, he could not tell when he transferred them.   It was after 1816, but when, or how long, he could not tell.   Then seeing the record of these two judgments shows that as late as the 2d of May 1820, more than thirteen months after J. K. Boyer had parted with the land to Weitzell, he was still the owner of the judgments, and as such got Snell on that day to agree that a *fieri facias* might be issued on them for his own use ; I say, for his own use, because no mention is made therein of Isaac Boyer, nor did his name appear then in any way upon the record of these judgments.   This seems to have been done with a view, as expressed in this agreement of Snell, to levy on certain houses and lots of land therein mentioned as being the property of Snell.   This was done by agreement, probably in order to avoid the delay and expense of suing out, previously, writs of *scire facias' quare executio non, &c.* ; but the houses and lots being designated as the property on which the executions should be levied, rather goes to show that they should not be levied on the land in question.   But not until after this, when a *præcipe* was given for issuing a *fieri facias* upon one of these judgments to the August term of the court following, does it appear that any assignment was made to Isaac Boyer of these judgments, or that he had any interest in

[Koons v. Hartman.]

them whatever.　Down, then, to the 2d of May 1820, J. K. Boyer, by the record of the judgments and all proceedings had upon them, appears to be the owner thereof, and in the absence of evidence showing the contrary clearly and distinctly, must therefore still be regarded as the owner and not as having parted with his interest in them. If, in fact, he did do so, before that time, it was doubtless in the power of the plaintiff to have shown it, by producing the writing of J. K. Boyer, containing the assignment, for it is not likely it was done without writing; the plaintiff, being the administrator of Isaac Boyer, may fairly be presumed, as such, to be in the possession of this paper: and if it be that it would have shown any thing in his favour, it may also be presumed that he would have produced it.　In short, if the jury, upon the whole of the evidence given, had found the fact otherwise, it would have been the duty of the court to have set their verdict aside.　We, therefore, are of opinion that the court were right in instructing the jury on this point as they did.

As to the other matters assigned for error, we think there is nothing in them that seems to require particular notice ; and it is sufficient to say that the court below were clearly right in instructing the jury as they did in regard to each of them.

Judgment affirmed.